Joe JENICKE, et ux Wanda
Jenicke, Appellants,

v.

CITY OF FOREST HILL,
Texas, Appellee.

No. 2–92–093–CV.

Court of Appeals of Texas,
Fort Worth.

April 6, 1994.

Rehearing Overruled May 10, 1994.

Tim G. Sralla, Fielding, Barrett & Taylor, Fort Worth, for appellants.

George A. Staples, Jr., Staples & Hampton, Hurst, for appellee.

Before LATTIMORE, WEAVER and ASHWORTH, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal by Joe and Wanda Jenicke (the "Jenickes") from a summary judgment granted in favor of the City of Forest Hill, Texas (the "City"). We affirm.

The Jenickes sued the City after Joe Jenicke ("Joe") was injured July 17, 1982 in a natural gas explosion at Sleepy's Liquor Store, 5110 Mansfield Highway, Forest Hill, Texas. Joe had been sent by his employer, Lone Star Gas Company, to investigate a gas leak reported by the Forest Hill Department of Public Safety ("DPS")[1] after a car crashed into the front of the store. The explosion occurred as Joe was looking under the car in

1. The Forest Hill Department of Public Safety operated in both a police and fire protection and

control capacity.

order to determine the extent of damage to a gas meter struck by the car.

The Jenickes asserted causes of action against the City pursuant to the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.021(1), (2) (Vernon 1986), and 42 U.S.C.S. §§ 1983 (Law.Co–Op 1986), 1988 (Law. Co–Op 1989). They alleged that the City was liable, pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(1), because their injuries were caused by the following specific acts and omissions of negligence by DPS employees arising from the operation and use of a motor-driven vehicle or motor-driven equipment:

(1) failing to call for assistance from, and utilize, a working fire truck;

(2) utilizing an inoperable fire truck;

(3) failing to properly position the fire truck to act as a safety barrier for civilians;

(4) failing to utilize available motor-driven equipment to set out a spray pattern to disburse gas in the area;

(5) failing to place the fire engine in an area protected from a potential blast; and

(6) failing to utilize the fire engine to properly deploy fire fighting and supply lines.

The Jenickes also alleged that the City was liable, pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2), because their injuries were caused by the following conditions or uses of tangible personal property under circumstances where the City would, if it were a private person, be liable to them under Texas law:

(1) failing to utilize available tangible equipment and material to properly establish a command post;

(2) failing to utilize equipment to ascertain that a main line crew was necessary to shut off the gas;

(3) failing to properly utilize communication equipment to forward relevant information to Lone Star Gas Company, including notification of the size and nature of the gas leak and the necessity of a main line crew to shut off the gas;

(4) failing to properly place the fire engine in a protected area to act as a barrier to civilians;

(5) misusing fire hoses to properly handle a gas leak;

(6) misusing an MSA explosion meter to fail to determine the gas danger zone and level of gas concentration;

(7) failing to properly disburse the leaking gas using fire hoses and other available tangible equipment;

(8) failing to properly deploy fire fighting and supply lines to diffuse the entire area;

(9) failing to utilize hoses and other equipment to set out a spray pattern to disburse gas in the area; and

(10) failing to utilize available training materials to properly train DPS supervisory personnel and operational personnel.

Next, the Jenickes alleged that the City was liable, also pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2), because their injuries were caused by a condition or use of real property under circumstances where the City would, if it were a private person, be liable to them under Texas law. The Jenickes specifically asserted that:

(1) the City owed a duty of reasonable care not to injure Joe because it voluntarily undertook an affirmative course of action for Joe's benefit;

(2) although not an owner or occupier of the premises where Joe's injuries occurred, the City assumed control over both the premises where the injury occurred and persons on the premises, including Joe;

(3) the City knew, but failed to warn Joe of the explosive potential of the gas leak;

(4) the City allowed, directed, and encouraged Joe to place himself in a position of imminent danger; and

(5) Joe did not know of the explosive potential of the gas leak.

Finally, the Jenickes asserted the City was liable under 42 U.S.C.S. § 1983 for damages resulting from violations of various Constitutional torts. The City moved for summary judgment on the grounds that: (1) no genuine issues of material facts existed; (2) it was immune from the Jenickes' claims under the Texas Tort Claims Act by virtue of TEX.CIV. PRAC. & REM.CODE ANN. § 101.055(3) (Vernon

Supp.1994); and (3) the Jenickes' pleadings failed to state a cause of action under 42 U.S.C.S. § 1983. Although the City stated it was relying on "the pleadings, the affidavits herein filed and the discovery and responses to discovery in this case ...", no evidence was attached to its motion. The response filed by the Jenickes, however, had attached to it over 500 pages of evidence. The trial court granted the City's motion for summary judgment without giving the specific grounds for its ruling, stating it considered the pleadings, evidence and arguments of counsel.

 When a motion for summary judgment is directed solely at the pleadings, the issue on appeal is whether the nonmovant's pleading, when liberally construed, fails to show a genuine issue of material fact as a matter of law. *See* TEX.R.CIV.P. 166a; *Abbott v. City of Kaufman*, 717 S.W.2d 927, 929 (Tex.App.—Tyler 1986, writ dism'd). In making this determination, we must take as true every factual allegation in the nonmovant's pleading and resolve all doubts as to the existence of a genuine issue of material fact against the movant. *See Abbott*, 717 S.W.2d at 929. This does not mean, however, that we must accept as true appellants' claims that statutory and constitutional violations occurred. The question of whether the facts and circumstances as alleged by the parties amount to violations of the statutes raised is a question of law.

 When a trial court does not specify the grounds relied upon in granting summary judgment, we must affirm if any of the grounds asserted in support of the motion are meritorious. *See Home Indem. Co. v. Pate*, 814 S.W.2d 497, 500 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

## Texas Tort Claims Act

In points of error one through five, the Jenickes allege that the trial court erred in granting summary judgment for the City because: (1) the pleadings and evidence raised a disputed question of material fact; (2) they properly pled a cause of action for negligence; (3) the City did not establish the existence of governmental immunity as a matter of law; and (4) the facts pled raised a question of fact as to the applicability of governmental immunity.

The first issue we will address in analyzing the Jenickes' complaints of error is whether any fact questions exist on the applicability of TEX.CIV.PRAC. & REM.CODE ANN. § 101.-055(3). If there are none, the City is immune from liability pursuant to section 101.-055(3) as a matter of law by the doctrine of governmental immunity. *See Ross v. City of Houston*, 807 S.W.2d 336, 338 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

We note initially in addressing this section that appellee City did not raise TEX.CIV.PRAC. & REM.CODE ANN. § 101.055(2) (Vernon Supp. 1994) and argue that it is immune from liability because the events at issue occurred during a response to an emergency situation. That exception to the waiver of liability is therefore not before us. Section 101.055(3) states that the Tort Claims Act "does not apply to a claim ... arising from the failure to provide or the method of providing police or fire protection." Section 101.055(3). In *State v. Terrell*, 588 S.W.2d 784 (Tex.1979), the Texas Supreme Court concluded that the legislature's purpose in enacting this section was to avoid judicial review of the policy decisions governmental units must make in deciding how much, if any, police or fire protection to provide for a community. *Id.*, at 788. The language of this section was thus interpreted as requiring that if the negligence alleged relates to the formulation of policy, the governmental unit remains immune from liability. *Id.* If however, the negligence is in the manner in which policy is carried out, liability may exist under the Tort Claims Act. *Id.*

The *Terrell* court used the following example of a policy decision for which a governmental unit would be immune from allegations of negligence:

> [D]amages resulting from a government's decision to provide only three fire trucks for a community may not be recovered against the governmental unit on the theory that [it] was negligent in providing an inadequate number of fire trucks.

*See id.* This is a decision relating to the formulation of policy because it concerns how much, if any, fire protection to provide for a

community. We also find the court's application of the law to the facts in *Terrell* instructive:

> Here, the Texas Highway Department, pursuant to a statute fixing maximum speeds, has a policy of detecting and apprehending individuals who exceed the speed limit by use of radar and motor vehicles. Such a policy decision is not subject to an attack of negligence under this Act. This policy, however, obviously does not include directing the officer to strike any vehicle in his path in apprehending a speeder. The accident which occurred in this case was not a part of the formulated policy. Therefore, the State is subject to liability for injuries resulting from the negligence, if any, of the highway patrolman in colliding with Mr. Terrell's vehicle.

*Id.*

■ After studying each of the specific acts and omissions of negligence alleged by the Jenickes in the instant case, we hold as a matter of law that the City is immune from liability for its alleged negligence in: (1) failing to call for assistance from, and utilize, a working fire truck; (2) failing to utilize equipment to ascertain that a main line crew was necessary to shut off the gas; (3) failing to properly utilize communication equipment to forward relevant information to Lone Star Gas Company, including notification of the size and nature of the gas leak and the necessity of a main line crew to shut off the gas; and (4) failing to utilize available training materials to properly train DPS supervisory personnel and operational personnel. The essence of these allegations is that the DPS [City] was negligent in not having more fire trucks, more gas level detection equipment, more communications equipment, and a better training program. Under section 101.055(3), a governmental unit is not liable for such omissions in its actual making of decisions on how much, if any, fire protection to provide for a community. *See Terrell,* 588 S.W.2d at 788.

■ Alternatively, the allegedly negligent acts outlined above would be instances of negligence in *failing* to carry out proper firefighting routines. The following additional allegations also charge the DPS [City] with acts and omissions of negligence in the manner of carrying out its function of protecting the community from fires: (1) utilizing an inoperable fire truck; (2) failing to properly position the fire truck to act as a safety barrier for civilians; (3) failing to utilize available motor-driven equipment to set out a spray pattern to disburse gas in the area; (4) failing to place the fire engine in an area protected from a potential blast; (5) failing to utilize the fire engine to properly deploy fire fighting and supply lines; (6) failing to utilize available tangible equipment and material to properly establish a command post; (7) misusing fire hoses to properly handle a gas leak; (8) misusing an MSA explosion meter to fail to determine the gas danger zone and level of gas concentration; (9) failing to properly disburse the leaking gas using fire hoses and other available tangible equipment; (10) failing to properly deploy fire fighting and supply lines to diffuse the entire area; and (11) failing to utilize hoses and other equipment to set out a spray pattern to disburse gas in the area.

The essence of these allegations is that the DPS [City] was negligent in misusing or failing to use equipment that was available at the accident scene. We decline to hold that, as a matter of policy, a governmental unit would make a decision to misuse or fail to use available fire fighting equipment any more than it would, as a matter of policy, direct a police officer to strike any vehicle in his path in apprehending a speeder. Instead, we hold that such allegations of negligence arise from carrying out the normal function of protecting a community from fires. Under section 101.055(3), such negligence may form the basis of liability for a governmental unit, where no emergency situation is alleged. *See Terrell,* 588 S.W.2d at 788.

The City argues that under *Ross,* 807 S.W.2d at 337, it is immune from even these remaining allegations. We disagree. In *Ross,* the plaintiffs alleged that the city was negligent in failing to find and correct an improperly sized hose connection on the fire hydrant closest to their house. *Id.* at 336. They asserted that the delay caused by not

being able to use the closest hydrant resulted in more damage to their house than would otherwise have occurred. *Id.* The court held as a matter of law "that the City's policy of inspecting fire hydrants is directly connected to the City's method of providing fire protection." *Id.* at 337. The allegations of negligence in the instant case are distinguishable because here the Jenickes attacked the City's manner of "carrying out" its fire fighting function. In *Ross,* the failure to check the fire hydrant connections was a decision concerning "how much, if any, ... fire protection to provide for a community." *Id.* at 337, n. 1.

The decision of *Poncar v. City of Mission,* 797 S.W.2d 236 (Tex.App.—Corpus Christi 1990, no writ) is similarly distinguishable. In that case, the court stated that "when the facts establish that there was no negligence in carrying out a formulated policy for police or fire protection, but that the complained of acts are carried out exactly as the policy is formulated, governmental immunity exists under section 101.055(3)." *Poncar,* 797 S.W.2d at 240. In the instant case, the City did not present any summary judgment evidence that the DPS followed the method determined by the City for putting out fires.

■ This then brings us to the question of whether the Jenickes stated a cause of action against the City for the acts of negligence involving *failure to properly carry out* the City's fire fighting policies. The Jenickes filed considerable evidence with the trial court, including some 528 pages in the transcript. Their discussion of the evidence, however, contains no record references except to pages in their pleadings where they alleged wrongdoing by the City. We have read through the statements by the witnesses at the scene, and agree that it was one of much confusion. There is, however, no evidence that the firefighters *misused* the equipment, only that they failed to use it at all until after the blast. Even the facts as alleged in appellants' pleadings were that no hoses were used and no gas-dispersing spray pattern was laid down before the explosion occurred. Of the eleven remaining acts of negligence listed above, all but two are actually instances of *failure to use* tangible personal property—and the City is not liable for failure to *use* personal property, only for the *misuse* of the property. *Montoya v. John Peter Smith Hosp.,* 760 S.W.2d 361, 363 (Tex. App.—Fort Worth 1988, writ denied). Appellants contend the firefighters were negligent in: failing to position the truck to act as a barrier to civilians; failing to use the pumps on the trucks to disburse the gas with a spray pattern of water; failing to use the truck to deploy fire hoses and other equipment; failing to establish a command post; and failing to use an MSA explosion meter to determine the gas concentration. (There is no evidence anyone had an MSA meter, except perhaps Jenicke, the gas company employee sent out in response to the reported gas leak). No one was manning the hoses when the explosion occurred.

We agree that this area of the law is in some confusion. The Supreme Court has not come to a clear consensus as to the scope of the various liability waiver provisions in the Texas Tort Claims Act. *See, e.g., Texas Dept. of Mental Health and Mental Retardation v. Petty By Kauffman,* 848 S.W.2d 680 (Tex.1992) (a decision that the State was liable for misdiagnosing a mental patient wrongfully institutionalized since 1934 was reached by four judges, with a fifth concurring only in the result, while the other four justices dissented); *see also University of Tex. Medical Branch v. York,* 808 S.W.2d 106 (Tex.App.—Houston [1st Dist.] 1991), *rev'd,* 871 S.W.2d 175 (Tex.1994) (*holding* State has not waived immunity from liability or use, misuse, or nonuse of medical information; note that the opinion was rendered by the court of appeals in 1991, application for writ of error was filed June 25, 1991, was granted April 14, 1993 more than two years later, and not decided until nearly another year had passed). The present state of the law requires us to hold the City is immune under the Texas Tort Claims Act from liability for failure to use the fire fighting equipment.

■ The other contentions of negligence stated above are only repetitious rewordings of the same complaints, except for the complaint of using an inoperable fire truck and failing to place the truck where it would be safe from a potential blast. We hold as a

matter of law under the facts of this case as pled by Jenicke that, since no one tried to use the truck until after the blast, the fact that it might have been damaged by the blast, or not in working order before the blast, could not have caused Jenicke's injuries. *Chambers v. City of Lancaster,* 843 S.W.2d 143, 148 (Tex.App.—Dallas 1992, writ granted).

## 42 U.S.C.S. § 1983 CLAIMS

Appellants have also argued on appeal that they are entitled to recover under the Federal laws for violation of their rights under 42 U.S.C.S. § 1983. Title 42 U.S.C.S. sec. 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

*Id.* "A cause of action under this section involves two essential elements: (1) the conduct complained of was committed by a person acting under a color of state law, and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on another ground, Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986)." *Mitchell v. Amarillo Hosp. Dist.,* 855 S.W.2d 857, 864 (Tex.App.—Amarillo 1993, writ denied).

■ Appellants contended in their pleadings that the injuries suffered by Joe deprived him of rights protected by the Fifth and Fourteenth Amendments to the U.S. Constitution and under Article I, § 19 of the Texas Constitution.[2] More particularly, appellants alleged they were deprived of "liberty and property rights to health, safety, life, liberty and the pursuit of happiness without first, second and third degree burns, as guar-

anteed ... under the Fifth and Fourteenth Amendments to the United States Constitution." They argued Joe's rights to personal security, right to earn a living, to pursue a chosen career and to travel, all protected by the Fourteenth Amendment were also violated. Wanda, Joe's wife, also asserted her similar rights had been violated because of Joe's injuries. Finally, Joe contended that because his injuries occurred while he was under the control of the DPS employees, his injuries were a violation of his right to be free from "unwarranted and injurious seizures guaranteed by the Fourth Amendment to the United States Constitution." Appellants also contend that many of the negligent acts of the DPS employees occurred because the employees were poorly trained and equipped, in accordance with policies of the City, and that such policies exhibit a conscious disregard for the rights of the Jenickes.

■ We observe initially that the right to the pursuit of "happiness" is not in the Constitution, rather it is referred to in the Declaration of Independence, thus it is not a right of constitutional dimensions protected by § 1983 and we shall not address it further. Additionally, several of appellants' claims assert vaguely that they were denied life, liberty and property in violation of the Fifth and Fourteenth Amendments, but nowhere in their petition do they allege any action by the City which deprived them of those rights *in violation of their rights to due process or equal protection.* The constitutional prohibition against deprivation of property, etc., is not absolute, but only that the state actor may not do so without giving the citizen due process and equal protection of the law. The due process clause is not brought into play by a negligent act of a state actor causing unintended loss or injury to life, liberty or property. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986).

The Jenickes argue that under *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the City may

---

**2.** Violation of a state constitutional section does not give rise to a claim under 42 U.S.C.S.

§ 1983. *Whitton v. City of Houston,* 676 F.Supp. 137, 139 (S.D.Tex.1987).

be liable for injuries caused by the carrying out of its policies. The U.S. Supreme Court has stated that a municipality may be liable:

> [W]here its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205, 103 L.Ed.2d at 427. The City responds by arguing that there is no liability since Jenicke was not in custody, and the City otherwise had no duty to Jenicke. Neither side is entirely correct.

■■■■ A party need not be in custody to assert a cause of action under section 1983. *See, e.g., Collins v. City of Harker Heights,* 503 U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (suit brought by surviving widow of sanitation department employee killed by asphyxiation while working in a manhole). The U.S. Supreme Court stated that section 1983 "provides a cause of action for all citizens injured by an abridgment of [Constitutional] protections." *Collins,* 503 U.S. at ——, 112 S.Ct. at 1066, 117 L.Ed.2d at 270. The key to resolution of this suit is not whether Jenicke was in custody but whether some "action pursuant to official municipal policy of some nature caused a *constitutional* tort." *Id.* (emphasis added). The court went on to state that "[w]e did not suggest [in *Canton* ] that all harm-causing municipal policies are actionable under § 1983 or that all such policies are unconstitutional." *Collins,* 503 U.S. at ——, 112 S.Ct. at 1067, 117 L.Ed.2d at 272. Section 1983 does not provide a right to be free of injury whenever a government actor may be characterized as a tortfeasor. *Mitchell,* 855 S.W.2d at 868.

It is well established that 42 U.S.C. § 1983 does not itself create substantive rights; it merely provides a remedy for federal rights established elsewhere. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). To sustain an action based on Section 1983, Plaintiff must establish two elements: (1) that Defendants deprived her of a right secured by the Constitution or laws of the United States; and (2) that the Defendants were persons acting under color of state law, custom, or usage. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Thus, Section 1983 does not provide a remedy for "any and all injuries inflicted by persons acting under color of state law." *Washington v. District of Columbia,* 802 F.2d 1478, 1480 (D.C.Cir. 1986). **The deprivation must be of constitutional magnitude.**

*Whitton v. City of Houston,* 676 F.Supp. 137, 139 (S.D.Tex.1987) (emphasis added); *see also Jackson v. Byrne,* 738 F.2d 1443 (7th Cir.1984). In *Whitton,* the plaintiff was injured when she attempted suicide by a drug overdose and two paramedics misdiagnosed the severity of her state and released her to minor relatives, resulting in subsequent injuries. *Whitton,* 676 F.Supp. at 138. The federal district court held that there was no duty to provide the paramedic services and thus there was no violation of *Constitutional* rights, although the plaintiff had arguably stated a tort cognizable under Texas state law. *Id.* at 139. "Courts have rejected the Fourteenth Amendment's due process clause as a source of a state's duty to provide services." *Handley v. City of Seagoville, Tex.,* 798 F.Supp. 1267, 1271 (N.D.Tex.1992) (no section 1983 cause of action stated for failure to provide ambulance service resulting in Handley's death).

■■■■ The seventh circuit held in *Jackson* that the City of Chicago could not be held liable under section 1983 for the deaths of two children which occurred during a strike by members of the Chicago fire department when police officers prevented striking fire fighters from retrieving equipment from the closed station in an attempt to fight the fire. *Jackson,* 738 F.2d at 1446.

Appellants claim that the facts in this case implicate the Fourteenth Amendment's protection against deprivation of life or property without due process, but that position is untenable. Although there were deaths in this case, the state did not, within the meaning of the Fourteenth

Amendment, "deprive" plaintiffs' decedents of life ...

. . . .

Not every death that results from the state's failure to act is a "depriv[ation]" under the Fourteenth Amendment. Before an omission that leads to a death is actionable under the Fourteenth Amendment and Section 1983, the Constitution must recognize an underlying duty on the part of the state to act.

We have elsewhere stated that nothing in the Constitution requires governmental units to act when members of the general public are imperiled[...] "[T]he Constitution is a charter of negative liberties; it tells the [government] to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order." [*Beard v. O'Neal,* 728 F.2d 894, 899 (7th Cir.1984) ] ... The Constitution creates no positive entitlement to fire protection....

*Jackson,* 738 F.2d at 1446. Even where some sort of fire protection is offered by the city, failure to adequately train personnel is not a constitutional tort. *Salas v. Carpenter,* 980 F.2d 299, 310 (5th Cir.1992).

We recognize that in certain cases courts have found that the Constitution creates an affirmative duty on the part of governmental units to provide elementary protective services to specified individuals. In every one of those cases, however, the individuals entitled under the Constitution to governmental services were persons with whom the state had created a custodial or other special relationship.

*Jackson,* 738 F.2d at 1446–47. The Jenickes argue that Jenicke was under the control of the DPS employees, but their own pleadings belie that claim. They contended in their petition that Joe was "dispatched by his employer to investigate a complaint called in by the Forest Hill Department of Public Safety ..." Once at the scene, Joe observed that DPS employees were already there with some equipment and were "asserting control over the premises." The Jenickes then alleged that Joe observed that "a vehicle had collided with the front of Sleepy's Liquor Store," and it was "[i]n order to investigate the complaint of leaking gas as instructed by his employer and at the express direction of DPS officers at the scene" that Joe approached the vehicle. The Jenickes contend that the explosion occurred "[a]s soon as Mr. Jenicke began to look underneath the car." Our reading of the evidence introduced in response to the summary judgment motion by appellants showed that Jenicke went to the scene in response to the DPS' call to the gas company. He was shown to the location of the leak and was accompanied by several DPS employees to the car which had struck the meter. The explosion, which injured Jenicke and several DPS employees, and resulted in the death of one DPS officer, occurred shortly after Jenicke knelt by the car and looked underneath it. The witnesses who described the scene stated the odor of natural gas was very strong and was accompanied by a "spewing" sound. We see no allegation or evidence of Joe being restrained and controlled in a sense intended by the constitutional protections.

Functioning in the course and scope of his employment as a gas company employee, Jenicke was probably the most knowledgeable person on the scene and should have been the most aware of the dangers involved. He stated in his deposition that "any gas leak is just a dangerous situation. I can't see where it would ever be an emergency situation." The alleged policies of the City of North Hill to inadequately train and equip its DPS officers are not "arbitrary, or conscience-shocking, in a constitutional sense." *Collins,* 503 U.S. ——, 112 S.Ct. at 1070, 117 L.Ed.2d at 275.

Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," *Daniels v. Williams,* 474 U.S., at 332, 106 S.Ct., at 665, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law, ...

Our refusal to characterize the city's alleged omission in this case as arbitrary in

a constitutional sense rests on the presumption that the administration of Government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces. *Cf. Walker v. Rowe,* 791 F.2d 507, 510 (CA7 1986). Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country. The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood,* 426 U.S. [341], at 350, 96 S.Ct. [2074], at 2080, [48 L.Ed.2d 684].

*Collins,* 503 U.S. at ——, 112 S.Ct. at 1070, 117 L.Ed.2d at 275. Jenickes' section 1983 claims are really negligence claims. It matters not how well disguised those claims are, they "cannot create a federal right where none exists." *Handley,* 798 F.Supp. at 1272; *Mitchell,* 855 S.W.2d at 869.

■ As to appellants' claims that they were injured as a result of a "seizure" in violation of the Fourth Amendment, appellants' above quoted pleadings also clearly show that these facts do not constitute a "seizure" as contemplated by the framers of the Constitution and the Supreme Court. Joe was "directed" to the meter, and was present to fulfill his job duties for Lone Star Gas. He was no untrained citizen seized by the DPS officers and ordered to go alone to the car to check for the gas leak. He makes no claims that he was forced to the car, that he was threatened with weapons or other abuses of police or governmental power. *See, e.g. Brower v. County of Inyo,* 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). Not only was there no "seizure", there was no "unreasonable" seizure, which must be present for recovery under section 1983. *Brower,* 489 U.S. at 599, 109 S.Ct. at 1383, 103 L.Ed.2d at 637.

We overrule appellants' points of error and affirm the judgment of the trial court.