**Ruth HILL, Individually and as Next Friend of Tellas Williams; Schanell and Darrell Durden, Individually and on Behalf of Crystal Lisa Durden, Deceased; Debra K. Williams, Individually and Benny Freeman, Individually, and on Behalf of Alex Lorenzo Freeman, Deceased**

v.

**THE CITY OF HOUSTON.**

**Civil Action No. G–97–578.**

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 23, 1998.

Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, Pete Thomas Patterson, Hitt and Patterson, Houston, TX, for Plaintiff.

Murray Edward Malakoff, City of Houston Legal Dept., Houston, TX, for Defendant.

## *ORDER*

KENT, District Judge.

Plaintiffs bring this action under 42 U.S.C. § 1983 against the City of Houston, alleging

violations of due process and equal protection under the Fifth, Eighth, and Fourteenth Amendments to the Constitution, as well as pendent state claims under the Texas Tort Claims Act ("TTCA"), Tex.Civ.Prac. & Rem. Code §§ 101.001–101.109 *et seq.* Now before the Court is Defendant's Motion to Dismiss, filed October 30, 1997. For the reasons stated below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

## I. FACTUAL BACKGROUND

Plaintiffs in this case are the survivors of two children who died in a house fire on January 4, 1996. Another child, Tellas Williams, also allegedly suffered injuries as a result of the fire. On the morning of January 4, 1996, a fire was reported at 2109 Ellington, the home of Plaintiff Ruth Hill, the children's grandmother. The fire was reported at 10:00 a.m., and the Houston Fire Department ("HFD") dispatched Booster Unit 67 to the scene at 10:06 a.m. For reasons alleged by the Plaintiffs to be negligence and misuse/malfunction of the fire equipment, the firefighters were unable to go inside the house for several minutes. Crystal Durden and Alex Freeman died in the fire from asphyxia, while Tellas Williams sustained burn injuries to his hands, chest and face. The HFD determined the time of death for the two children to be approximately 10:37 a.m., thirty minutes after the HFD arrived at the scene.

Plaintiffs allege that the equipment dispatched to the site, Booster Unit 67, was not working properly, and that Defendant was aware of this. Plaintiffs further allege that Defendant's negligence in failing to properly maintain and repair the equipment caused a delay in HFD's efforts to rescue the children which resulted in the deaths and injuries. Specifically, Plaintiffs allege that on December 5, 20, and 21 of 1995 HFD employees reported Booster Unit 67 as defective and designated it as "Priority One," to be repaired within twenty-four hours. The City of Houston allegedly failed to repair the equipment as requested. Furthermore, the areas of Houston served by HFD Substation 67 are predominantly black, and Plaintiffs allege that the City neglected its duty to repair the defective equipment in favor of providing better protection to more affluent white neighborhoods, in violation of the Equal Protection Clause.

## II. ANALYSIS

When considering a Motion to Dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Such motions should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

### A. Federal Claims

■ First, Defendant City of Houston moves to dismiss Plaintiffs' Fifth Amendment claims. The Fifth Amendment applies only to actions by the federal government, not to the actions of a municipal government. *Morin v. Caire,* 77 F.3d 116, 120 (5th Cir. 1996). Because Plaintiffs have not asserted any facts that would implicate the federal government, no cognizable Fifth Amendment claims exist. Accordingly, Defendant's Motion to Dismiss Plaintiffs' Fifth Amendment claims is **GRANTED,** and those claims are **DISMISSED WITH PREJUDICE.**[1]

■ Next, Defendant moves to dismiss Plaintiffs' Eighth Amendment claims. The Eighth Amendment's protection extends only to those who have been convicted of a crime, and is concerned with the State's power to punish after an individual has been adjudicated guilty. *See DeShaney v. Winnebago*

---

1. Plaintiffs do not address Defendant's Motion to Dismiss their Fifth and Eighth Amendment claims, and have removed these claims in their First Amended Complaint, filed subsequent to Defendant's Motion. However, insofar as Plaintiffs assert Fifth Amendment claims in the First Amended Complaint's reference to violations of "constitutional and civil rights," the Court feels it necessary to rule on the Motion for the sake of clarity.

*County Dep't of Soc. Serv.,* 489 U.S. 189, 199 n. 6, 109 S.Ct. 998, 1005 n. 6, 103 L.Ed.2d 249 (1989). The Eighth Amendment clearly does not apply to the facts of this case. Accordingly, Defendant's Motion to Dismiss Plaintiffs' Eighth Amendment claims is **GRANTED,** and those claims are **DISMISSED WITH PREJUDICE.**

■ Next, Defendant attacks Plaintiffs' Fourteenth Amendment claims of due process and equal protection. Predictably, Defendants argue that because the Due Process Clause does not guarantee an affirmative right to governmental aid, "it follows that the State cannot be liable under the Clause for injuries that could have been averted had it chosen to provide [protective services]."

■ Although Plaintiffs did not state whether they are claiming substantive or procedural due process, the Court assumes that their claim is for substantive due process. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A violation of substantive due process occurs when the government deprives someone of liberty or property, or when the government "works a deprivation" of a constitutionally protected interest. Therefore, to state a claim under section 1983 for a violation of due process, Plaintiffs must first prove the deprivation of a constitutionally protected life, liberty, or property interest, and then identify an official action that caused the constitutional deprivation. *Johnson v. Houston Indep. Sch. Dist.,* 930 F.Supp. 276, 285 (S.D.Tex.1996) (citing *Blackburn v. City of Marshall,* 42 F.3d 925, 935 (5th Cir.1995)). Historically, this guarantee of due process has been applied to deliberate, rather than merely negligent, decisions of government officials to deprive a person of life, liberty, or property. *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

Plaintiffs have clearly alleged the deprivation of a constitutionally protected life inter-

est, since the fire resulted in the deaths of two children. They also allege that the conduct of the City of Houston in neglecting fire services provided to other citizens deprived them of this constitutional right. The Due Process Clause was intended to promote fairness by requiring the government to adhere to certain requirements in the administration of its mandates. Allegations that a municipality did not adhere to its own policies and procedures in providing basic services to its citizens clearly falls within the ambit of conduct prohibited by the Due Process Clause. This is not a situation where the City is being sued for injuries that would have been averted had it chosen to provide services: rather, in this case the City *did* provide services,[2] but provided them in an arbitrary or discriminatory manner. Accordingly, Plaintiffs have properly pled a cause of action for substantive due process, and Defendant's Motion to Dismiss Plaintiffs' Due Process claims is **DENIED.**

■ The Equal Protection Clause requires similar treatment of all persons similarly situated. U.S. Const. amend. XIV; *see City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (Equal Protection Clause commands like treatment of those similarly situated); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Furthermore, it is well-established that a party who wishes to make out an equal protection claim must prove the existence of purposeful discrimination motivating the alleged state action. *See Washington v. Davis,* 426 U.S. 229, 246–50, 96 S.Ct. 2040, 2051–52, 48 L.Ed.2d 597 (1976) ("The requirement of purposeful discrimination is a common thread running through [equal protection] cases...."); *Vera v. Tue,* 73 F.3d 604, 609–10 (Equal Protection Clause is violated only by intentional discrimination).

■ In regard to equal protection, Defendant claims that Plaintiffs "fail to allege any discrimination against any group or geographical area in providing fire protection throughout the City." The Court agrees that

---

**2.** Moreover, the provision of fire protection and control is one of "those functions that are enjoined on a municipality by law," Tex.Civ.Prac & Rem.Code § 101.0215(a), and therefore is not a discretionary power, as Defendant argues.

Plaintiffs' Original Complaint fails to sufficiently plead facts which would support a claim based on equal protection; no facts appear in that Complaint establishing that Plaintiffs were treated differently from other groups. However, on January 9, 1998 the Court entered an Order allowing Plaintiffs to file their First Amended Complaint. This Complaint does allege a supportable equal protection claim: that the HFD "failed to implement their policy ... in such a way that they failed to provide equal protection to the citizens, predominantly minority, specifically black areas of Houston served by substation 67 so as to provide same to more affluent white neighborhoods."

Essentially, Plaintiffs allege that the City of Houston routinely and systematically sacrificed the maintenance and repair of vehicles at Substation 67, located in a predominantly black neighborhood, for the benefit of more affluent neighborhoods served by other substations in Houston. Such facts, if true, establish an actionable equal protection claim. Accordingly, Defendant's Motion to Dismiss Plaintiffs' claims under the Equal Protection Clause is **DENIED**.

■ Next, Defendant moves to dismiss Plaintiffs' conspiracy claims under 42 U.S.C. §§ 1985 and 1986 on three grounds. First, Defendant claims that Plaintiffs have failed to allege a constitutional violation. Because this Court has ruled that Plaintiffs have stated a cause of action for constitutional deprivations of equal protection and due process, this argument fails. Second, Defendant claims that Plaintiffs have failed to plead class-based animus. Again, Plaintiffs' First Amended Complaint has cured this defect by pleading race-based equal protection violations.

Finally, Defendant claims that the conspiracy claims cannot stand because the City of Houston and its employees constitute a single entity which is incapable of conspiring with itself. As this Court has repeatedly held, a single legal entity, such as the City of Houston and its employees, is incapable of conspiring with itself for the purposes of § 1985. *See Baldwin v. University of Texas Medical Branch at Galveston*, 945 F.Supp. 1022 (S.D.Tex.1996), *aff'd*, 122 F.3d 1066 (5th Cir.1997); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir.1994). It is a longstanding rule in this Court and in the Fifth Circuit that "a corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard*, 30 F.3d at 653 (citing *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir.1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953)). The Fifth Circuit and several district courts within the Circuit have applied this "intracorporate conspiracy" doctrine to entities other than corporations. *See, e.g., Thompson v. City of Galveston*, 979 F.Supp. 504, 511 (S.D.Tex.1997) (Galveston Police Department and its employees constitute single legal entity); *Baldwin*, 945 F.Supp. at 1034 (medical school and its employees); *Hilliard*, 30 F.3d at 653 (school board and its members); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F.Supp. 1323, 1330 (N.D.Tex.1988) (high school and its officials).

This case, however, differs from those cited above. Plaintiffs' conspiracy claims against the City of Houston arise from the allegations that the Fire Department, Fleet Management, and Legal Department of the City of Houston conspired to cover up the events relating to the fire and subsequent investigation. All of the named entities are separate departments within the City of Houston, a huge organization with numerous branches and departments independent from one another. Here, Plaintiffs allege that three separate departments of the City of Houston conspired with each other, a situation distinct from the cited cases where the Court and the Fifth Circuit have found single entity status for conspiracy purposes. The Court is unconvinced, for purposes of a Rule 12(b)(6) Motion to Dismiss, that the single entity doctrine should be applied to preclude Plaintiffs' conspiracy claims in such circumstances. Accordingly, Defendant's Motion to Dismiss Plaintiffs' conspiracy claims under 42 U.S.C. §§ 1985 and 1986 is **DENIED**. However, this issue may be revisited by Defendant in further motions for dispositive relief after a more complete development of the record.

## B. *State Law Claims*

 Defendant claims that it is entitled to sovereign immunity from Plaintiffs' Texas Tort Claims Act ("TTCA") claims. The doctrine of governmental immunity shields governmental units from liability for torts committed by their employees except to the extent that the immunity is waived by the TTCA. *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 121 (Tex.App.—Houston [1st Dist.] 1995, no writ). The TTCA waives municipal liability for the negligent conduct of public servants acting within the scope of their employment, if such negligence arises from the operation or use of motor-driven vehicles or equipment, or from a defective condition or use of real or tangible personal property, and if under the circumstances a private person would be liable under Texas law. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021.[3]

Defendant argues that the City is not subject to the waiver of immunity under section 101.021 because "controlling water pressure through electric driven motor pumps is not the operation and use of motor-driven equipment." As support for this incredibly strained reading of the statute, Defendant cites *Schaefer v. City of San Antonio*, 838 S.W.2d 688, 693 (Tex.App.—San Antonio 1992, writ denied). That case held that motor-driven pumps used to propel water through a water main did not constitute actionable operation or use of motor-driven equipment, reasoning that "the pleading and proof relate to matters involving the practical application of the principles or processes of directing and controlling water distribution to the City of San Antonio, not to the practical application of principles or processes of using or operating motor-driven equipment." *Id.* at 692. Although the Court disagrees with the strained reading in *Schaefer*, that holding is distinguishable on the facts. Here, the "pleading and proof" clearly relate to the "practical application of principles or processes of using or operating" the motor-driven vehicle; that is, the operation of the fire equipment. The Court finds it unques-

tionable that the express terms of the statute apply to waive sovereign immunity in this case. The unnatural interpretation advanced by Defendant is completely unpersuasive.

 Defendant next argues that the malfunction of fire equipment cannot form the basis of a claim under the TTCA because it involves the *non-use*, rather than use, of tangible personal property. In this context, Defendant's argument is utterly ridiculous and frivolous, to the point of being contemptible. Essentially, Defendant argues that the government should have immunity when a piece of equipment malfunctions so badly as to be unusable, but not when the equipment works but malfunctions in such a way as to cause harm. Furthermore, in this case the HFD clearly *used* the equipment when it dispatched it to Ruth Hill's home. The City supports its feeble "non-use" distinction with a case that clearly states the exact opposite of what Defendant attempts to argue. Defendant cites *Jenicke v. City of Forest Hill*, 873 S.W.2d 776 (Tex.App.—Fort Worth 1994, no writ) for the proposition that immunity is preserved when a municipality fails to use operable fire equipment. In fact, *Jenicke* found that a municipality's misuse of, or failure to use, equipment that is available at the accident scene is an example of negligence in failing to carry out proper fire-fighting procedures, rather than negligence in formulating policy, and therefore that a municipality has no immunity from liability for such allegations. *Id.* at 780.

The distinction discussed in *Jenicke* between negligence in formulating policy and negligence in carrying out that policy determines the fate of Defendant's next argument, namely, that Plaintiffs' claim should be dismissed because section 101.055(3) of the TTCA removes firefighting methods from the limited waiver of immunity contained in the TTCA. That section provides that a governmental unit is not liable for claims arising from the failure to provide or the method of providing police or fire protection. TEX.CIV.PRAC. & REM.CODE § 101.055(3). Interpreting this provision, the Texas Supreme

---

**3.** The TTCA does not, however, waive sovereign immunity for intentional torts. TEX.CIV.PRAC. & REM.CODE ANN. § 101.057.

Court concluded that, by using the term "method," "the Legislature intended to exclude from the Act only those acts or omissions which constitute the execution of or the actual making of ... policy decisions." *State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979). Therefore, sovereign immunity exists as to the formulation of policy, but not as to the negligent implementation of that policy. *Id.; Jenicke,* 873 S.W.2d at 780. In this case, Plaintiffs allege that Defendant failed to properly implement its own policy regarding the repair of fire equipment, and negligently implemented its policy on responding to fires. Therefore, under the reasoning of *Terrell* no sovereign immunity exists to protect Defendant from liability for negligent implementation of its fire protection policies.[4] Accordingly, Defendant's Motion to Dismiss Plaintiffs' claims under the Texas Tort Claims Act is **DENIED.**

### III. CONCLUSION

For the foregoing reasons, Defendant City of Houston's Motion to Dismiss for Failure to State a Claim is **GRANTED** with respect to Plaintiffs' claims under the Fifth and Eighth Amendments, and those claims are **DISMISSED WITH PREJUDICE.** Defendant's Motion is **DENIED** with respect to the remainder of Plaintiffs' claims, including the Fourteenth Amendment, conspiracy, and state law claims. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**

---

**4.** Defendant did not argue immunity under § 101.055(2) of the TTCA, which provides exemption from liability where the claim arises from the action of an employee while responding to an emergency call "if the action is in compliance with the laws and ordinances applicable to emergency action." Because Plaintiffs have alleged that the City was not in compliance with its laws and ordinances regarding maintenance of its fire equipment and response, this section likewise fails to rescue the City from exposure to liability.