The STATE of Texas, Petitioner,

v.

James M. TERRELL et al., Respondents.

No. B–8167.

Supreme Court of Texas.

Sept. 19, 1979.

Rehearing Denied Nov. 21, 1979.

Mark White, Atty. Gen., Jack Sparks, Asst. Atty. Gen., Austin, for petitioner.

Whitten, Sprain, Price, Wagner & Edwards, Marvin S. Sprain, Billy John Edwards and David R. Cobb, Abilene, Webb, Stokes & Sparks, Tom Webb, San Angelo, for respondents.

GREENHILL, Chief Justice.

The question presented in this Texas Tort Claims Act case is whether the State of Texas is subject to liability for personal injuries resulting from a highway patrol officer's negligent operation of a motor vehicle.

James M. Terrell and Security National Insurance Company,[1] our respondents, brought suit against highway patrolman James E. White and against the State of Texas, our petitioner, for damages for personal injuries allegedly resulting from a collision of Mr. Terrell's and Officer White's automobiles. The District Court rendered summary judgment for the State and severed Mr. Terrell's suit against Officer White from the suit against the State. The Court of Civil Appeals reversed the summary judgment and remanded the case against the State for trial. 574 S.W.2d 616. We affirm the judgment of the Court of Civil Appeals.

The summary judgment proof shows that the collision in question occurred on December 18, 1975, at about 6:00 p. m., on Highway 67 in Runnels County. Officer White had parked his patrol car on the shoulder of the westbound lane of the highway and was operating radar equipment for the detection of speeding eastbound traffic. Upon detecting a speeding eastbound vehicle, Officer White started his vehicle and moved his car into the westbound lane of the road. As he pulled his vehicle onto the highway, his vehicle collided with Mr. Terrell's westbound automobile. It is undisputed that Officer White had not turned on either the red light or the siren of his patrol car before the collision occurred.

The State contends that, by virtue of the doctrine of sovereign immunity, it is not subject to suit or to liability for any damages caused by the negligence of Officer White in operating his vehicle. Under this doctrine, the State is not liable for the torts of its officers or agents in the absence of a constitutional or statutory provision creating such liability. *Texas Highway Department v. Weber,* 147 Tex. 628, 219 S.W.2d 70 (1949).

The Texas Tort Claims Act, article 6252–19,[2] provides for a limited waiver of this

---

1. Security National Insurance Company has paid to Mr. Terrell workers' compensation benefits and has intervened in this suit to protect its subrogation rights.

2. Unless otherwise indicated, all statutory references herein are to Texas Revised Civil Statutes Annotated.

immunity. The waiver involved in this case is found in the following provision of the Act:

Sec. 3. Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment . . . under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state . . .

Section 14 of the Act, however, provides numerous exceptions to the waiver of immunity found in the above-quoted provision. Two of the exceptions to liability relevant to our consideration of this case are:

(8) Any claim arising out of the action of an officer, agent or employee while responding to emergency calls or reacting to emergency situations when such action is in compliance with the laws and ordinances applicable to emergency action.

(9) Any claim based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection or rebellion or arising out of the failure to provide, or the method of providing, police or fire protection.

■ The State contends that section 9 exempts the State from liability in this case. The State's argument is that this provision applies to all claims that arise out of actions taken by policemen in providing police protection.[3] The effect of the State's broad construction of this statutory exception would be to relieve governmental units from liability for the negligent acts of police and firemen if those acts occur while the government employees are acting in the course and scope of their employment. Since a governmental unit is liable only if its employees or officers are acting within the scope of their employment,[4] this construction of the statute would exempt virtually all activities of police and firemen from the Texas Tort Claims Act. We do not believe the Legislature intended to create such a broad exclusion.

■ The fundamental rule controlling the construction of a statute is to ascertain, if possible, the intention of the Legislature as expressed in the language of that statute. *Calvert v. Texas Pipe Line Co.,* 517 S.W.2d 777 (Tex.1974). In ascertaining this intent, courts must examine the entire statute or act and not merely an isolated portion thereof. *Id.* Further, if the intent of the Legislature is ascertained, courts must enforce that intent even though the intent is not altogether consistent with the strict letter of the statute. *State v. Dyer,* 145 Tex. 586, 200 S.W.2d 813 (1947). Admittedly, the ascertaining of the legislative intent underlying the Texas Tort Claims Act has not proved to be an easy task for Texas courts.[5]

■ Section 14(9), the exclusionary provision on which the State relies, speaks first to the exclusion of claims "connected with any act or omission arising out of civil disobedience, riot, insurrection or rebellion . . . ." This provision is similar to those found in the Tort Claims Acts of several states.[6] The purpose of this provision appears to be twofold: 1) to exclude liability for any injuries occurring as a result of police or military efforts to control riots and the like, and 2) to exclude liability for injuries resulting from a government's

3. In oral argument, the attorney for Respondent Terrell conceded that the highway patrolman was providing police protection at the time the accident occurred.

4. Article 6252–19, section 3.

5. *See Lowe v. Texas Tech University,* 540 S.W.2d 297, 301–03 (Tex.1976) (Greenhill, C. J.,

concurring); *County of Brazoria v. Radtke,* 566 S.W.2d 326, 330 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.) (Keith, J., concurring). *See also* Note, 55 Texas L.Rev. 719 (1977).

6. *See, e. g.,* Idaho Code section 6–904(7); Okla. Stat. tit. 51, section 155(6); Tenn.Code Ann. section 23–3311(7).

decision on *how* to control the riot or whether to control it at all. Thus, this exclusion for civil disturbances is quite broad in that it covers all acts by government officers and employees as well as all policy-making decisions.

The Legislature's apparent concern in enacting this provision was, in part, the enormous liability that would fall on local governments as a result of allowing recovery for damages caused by rioting and attempts to control it.[7] Another apparent concern, however, was to prevent judicial review of governmental decisions on how to control these disturbances. Were judges and juries allowed to pass on the wisdom of a city's decision not to control a riot or prevent subsequent looting, the ultimate authority for making such decisions would no longer lie with the officials who, traditionally, are politically responsible for making such decisions. The Legislature has apparently chosen to let that ultimate authority remain with those government officials.

■ The second portion of the exclusionary provision in question is the part on which the State relies for immunity. This portion provides that governmental immunity is retained for "[a]ny claim based on an injury or death connected with any act or omission . . . arising out of the failure to provide, or the method of providing, police or fire protection." The clause exempting governments from liability for injuries arising out of the failure to provide police or fire protection is clearly designed to avoid judicial review of the policy decisions that governments must make in deciding how much, if any, police or fire protection to provide for a community. Thus, this clause has a purpose similar to the second

purpose underlying the provision excluding injuries arising out of riots and other civil disturbances. For the reasons given below, we think that it was solely this second purpose that the Legislature considered in enacting the second portion of this exclusion.

This exclusion of policy decisions from judicial review is similar to another exclusion in the Texas Tort Claims Act: article 5262-19, section 14(7).[8] Section 14(7) excludes liability for all claims based on a government's failure to perform an act when the law leaves performance of the act to the *discretion* of the government. Section 14(7) appears to be broad enough to encompass the exclusion for failure to provide police or fire protection. As we understand the two provisions, the purpose of both is the same: to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions. The interests to be served by these provisions are several— *e. g.,* effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government.[9]

■ The State, however, relies on another clause in this exclusionary provision concerning police and fire protection. This clause is that exempting liability for injury or death arising out of "the *method* of providing" police or fire protection (emphasis added). The State would construe this clause to be a general exclusion for any act or omission that occurs while an officer is providing police or fire protection to the public. We think that the Legislature did not intend to create such a broad exclusion.

---

7. *See* Comment, 37 Brooklyn L.Rev. 434 (1971); *Riots and Municipal Liability,* 14 New York L.F. 824 (1968).

8. Section 14(7) provides the following exclusion:

(7) Any claim based upon the failure of a unit of government to perform any act which said unit of government is not required by law to perform. If the law leaves the performance or nonperformance of an act to the

discretion of the unit of government, its decision not to do the act, or its failure to make a decision thereon, shall not form the basis for a claim under this Act.

9. *See* Greenhill and Murto, *Governmental Immunity,* 49 Texas L.Rev. 462, 472 (1971); Note, *The Discretionary Exception and Municipal Tort Liability: A Reappraisal,* 52 Minn.L.Rev. 1047 (1968).

■ The term "method" is defined as "a procedure or process for attaining an object" and as an "orderly arrangement, development or classification." Webster's Third New International Dictionary 1422–23 (1966). The term is synonymous with the words "mode," "plan," "design," or "system." *Id.* Thus, the "method" of performing an act refers to the *decision* or *plan* as to how the act is to be performed. Similarly, the "method of providing police or fire protection" refers to the governmental decisions as to how to provide police or fire protection.

This analysis indicates that the provision concerning the "failure to provide" police or fire protection and the provision concerning the "method of providing" this protection have the same purpose—*i. e.,* avoiding judicial review of policy decisions made by a governmental unit in charge of providing police or fire protection. We think, therefore, that the Legislature intended to exclude from the Act only those acts or omissions which constitute the execution of or the actual making of those policy decisions. For example, damages resulting from a government's decision to provide only three fire trucks for a community may not be recovered against the governmental unit on the theory that the government was negligent in providing an inadequate number of fire trucks. Similarly, a government would not be liable for any injury or death resulting from a government's decision to use only minimal police efforts to control a riot or to control crime in a particular area of a city. *Cf., Westminster Investing Corp. v. G. C. Murphy Co.,* 140 U.S.App.D.C. 247, 434 F.2d 521 (D.C. Cir. 1970).

■ Thus, if the negligence causing an injury lies in the formulating of policy—*i. e.,* the determining of the *method* of police protection to provide—the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Act. The instant case provides a good example of the distinction between these two forms of negligence. Here, the Texas Highway Department, pursuant to a statute fixing maximum speeds, has a policy of detecting and apprehending individuals who exceed the speed limit by use of radar and motor vehicles. Such a policy decision is not subject to an attack of negligence under this Act. This policy, however, obviously does not include directing the officer to strike any vehicle in his path in apprehending a speeder. The accident which occurred in this case was not a part of the formulated policy. Therefore, the State is subject to liability for injuries resulting from the negligence, if any, of the highway patrolman in colliding with Mr. Terrell's vehicle.

The Court of Civil Appeals, in holding that Mr. Terrell stated a cause of action against the State under the Texas Tort Claims Act, employed a different rationale from that given herein. The lower court reasoned that section 14(9), the exclusionary provision involving police and fire protection, must be construed together with section 14(8), which provides that the following claims are excluded from the Act:

(8) Any claim arising out of the action of an officer, agent or employee while responding to emergency calls or reacting to emergency situations when such action is in compliance with the laws and ordinances applicable to emergency action.

■ In reading these two provisions together, the court reached the conclusion that the Legislature intended section 14(8) to be a limitation on section 14(9) so that the State would be exempt from liability for the negligent operation of a police vehicle only when the officer was responding to an emergency situation and complying with section 14(8), the emergency exemption. The court then noted that the State was not immune under the emergency provision because Officer White had failed to utilize his siren or red light, as required by article 6701d, sections 24, 124. While we agree with the holding of the Court of Civil Appeals that the emergency exclusion under section 14(8) was inapplicable, we disapprove the court's construing sections 14(8) and 14(9) together. Each of the twelve exemptions listed in section 14 of the Act is

a distinct exemption, complete unto itself. We agree with the lower court's statement that courts must examine the entire Act. *See State v. Dyer,* 145 Tex. 586, 200 S.W.2d 813 (1947). This rule of construction, however, does not permit courts to engraft the limitations of one statutory provision onto another.

The reasoning of the Court of Civil Appeals is similar to, and in fact based on, the reasoning in *County of Brazoria v. Radtke,* 566 S.W.2d 326 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.). For the reasons given above, we also disapprove of the rationale that the Court of Civil Appeals used in the *Radtke* case; but we approve the result of *Radtke.*

The State relies on language in two appellate opinions as authority for its contention that section 14(9) excludes liability for all acts or omissions committed by a police officer while providing police protection. These two decisions are *Davis v. County of Lubbock,* 486 S.W.2d 109 (Tex.Civ.App.—Amarillo 1972, no writ) and *Lloyd v. University of Texas,* 524 S.W.2d 958 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.). To the extent that the reasoning in those two cases conflicts with this opinion, those cases are disapproved. We also disapprove similarly broad language found in *Strickland v. City of Denver City,* 559 S.W.2d 116 (Tex.Civ.App.—Eastland 1977, no writ).

Our holding in this case is that the State of Texas is subject to liability for injuries arising out of the negligence, if any, of Officer White in operating his vehicle, provided such negligence occurred while Officer White was acting within the scope of his employment and not in an emergency.

The judgment of the Court of Civil Appeals is affirmed.