Celia MUTRUX, Individually, And As Representative of The Estate of William Arnold Mutrux, Deceased, And Marciana Trejo, As Next of Friend For Monica Mitchell Mutrux, A Minor, Plaintiff,

v.

CAMERON COUNTY, TEXAS, Defendant.

Civ. A. No. B–90–190.

United States District Court, S.D. Texas, Brownsville Division.

Dec. 29, 1992.

Barry Robert Benton, Brownsville, TX, for plaintiff.

Charles Willette, Jr., Brownsville TX, for defendant.

## MEMORANDUM AND ORDER

BLACK, United States Magistrate Judge.

This case has, with the consent of all parties been referred by the Honorable Filemon B. Vela, U.S. District Judge to the undersigned U.S. Magistrate Judge under the provisions of 28 U.S.C. § 636(c).

There is pending, Cameron County's Motion for Partial Summary Judgment.

## FACTUAL BACKGROUND

On May 9, 1988, William Mutrux, an eighteen year old inmate at the Cameron County Jail in Brownsville, Texas, committed suicide by hanging himself, (Custodial Death Report—Exhibit K—Exhibits To Plaintiff's Response To Defendant's Motion For Partial Summary Judgment).[1]

█ On April 15, 1988, Mutrux had been arrested and brought to the jail by Sheriff's Officers for disorderly conduct. Apparently there was a recognition by the Sheriff's Office and the jailers that Mutrux was disturbed, since he was placed in a padded cell and taken to MHMR (the court takes judicial notice, Fed.R.Evid. 201, that MHMR is an abbreviation for the Tropical Texas Center for Mental Health and Mental Retardation) (Exhibit B). For reasons not entirely clear in the record, MHMR did not accept Mutrux and he was released on April 16, 1988, at 3:36 a.m. (Exhibit E). He was reincarcerated almost immediately on a charge of burglary of a habitation. Mutrux tried to commit suicide on the way to jail by jumping out of the Sheriff Officer's car. The jailers were concerned enough to place Mutrux in a padded cell and keep him under close observation (Exhibit E).

On the Inmate Classification Profile prepared on April 16, 1988, (Exhibit F) Mutrux was classed as a "Special Attention Offender" because of "Suicidal tendencies". Sometime after his classification he was transferred to the Cameron County Detention Center and placed in a single cell (Tapia deposition page 18).

On April 23, 1988, Mutrux was interviewed by Dr. James Freeberg, a psychologist, for thirty to forty-five minutes; this was Mutrux's only visit with Dr. Freeberg (Freeberg deposition page 11).

On May 6, 1988, the jailers, concerned about Mutrux, transferred him back to the jail because of suicidal tendencies (Exhibit F(1)). According to Carlos Tapia, the chief deputy sheriff for operations, this was so that Mutrux could be observed closely (Tapia deposition page 20). On May 9, 1988, Mutrux was transferred to the infirmary on orders of Dr. Freeberg (Tapia deposition page 21).

Mutrux hung himself between 9:30 p.m. and 10:00 p.m. on May 9, 1988.

## PROCEDURAL BACKGROUND

Mutrux's mother filed suit individually and as representative of Mutrux's Estate, Marciano Trejo sued as next friend of Monica Michell Mutrux. Suit was brought seeking damages under the Texas Wrongful Death and Survivor Statutes § 71.004 and 71.021 Tex.Civ.Prac. & Rem.Code.

The cause of action was based on the Texas Tort Claims Act § 101.001 et seq. Tex.Civ.Prac. & Rem.Code, 42 U.S.C. §§ 1983, 1988 and general claims of violation of constitutional rights. Suit was originally filed in the Texas State Court. Cameron County, Texas, the only Defendant, removed the suit to federal court under the provision of 28 U.S.C. §§ 1331, 1343.

1. All Exhibit references are to the Exhibits attached to Plaintiff's Response To Defendant's Motion For Partial Summary Judgment.

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Cameron County has filed a Motion for Partial Summary Judgment claiming:

1) Cameron County is a governmental unit and its sovereign immunity has not been waived.
2) Plaintiff did not comply with § 101.-101 Tex.Civ.Prac. & Rem.Code which requires notice of claims to be made within six months of a claim arising against a governmental unit.
3) Plaintiff's have not stated a claim arising under the Texas Tort Claims Act's limited waiver of sovereign immunity.
4) Plaintiff's claims are barred by the Tort Claims Act § 101.055.
5) Mutrux's death was a suicide and the County is not liable for damages arising from suicide § 93.001(a)(2) Tex. Civ.Prac. & Rem.Code.

Cameron County does not address the constitutional or civil rights violations claimed by Plaintiff. The County's claims will be addressed out of order.

### A. CAMERON COUNTY'S NOTICE CLAIM

■ The Texas Tort Claims Act states in § 101.101 that a governmental unit such as Cameron County is entitled to receive notice of claims within six months after they arise. The notice must describe the incident, when and where it happened, and the damages claimed.

Mutrux did not comply with this provision and the County seeks Summary Judgment dismissing the Tort Claims actions on that ground. Mutrux argues that since the County had actual notice that her son's death had occurred, under the language of § 101.101(c) she did not have to give notice.

The Corpus Christi Court of Appeals in *Bourne v. Nueces County Hospital District,* 749 S.W.2d 630 (Tex.Ct.App.—Corpus Christi 1988—writ Ref. N.R.E.) held that the question of actual notice was a fact issue.

As the Corpus Court stated in *Cavazos v. City of Mission,* 797 S.W.2d 268, 271 (Tex. Ct.App.—Corpus Christi 1990—no writ history) "[t]he purpose of the notice of claim's requirement is to ensure that claims are promptly reported and that a city has an opportunity to investigate the merits of a claim while the facts are fresh."

Cameron County conducted a complete and thorough investigation of William Mutrux's death immediately. Statements were taken from the jailers who were on duty, an autopsy was performed and the County had actual notice of the death. To dismiss Plaintiff's case on the basis of non-compliance with § 101.101(a) would be an exercise in formalism, not in keeping with the Texas Supreme Court's mandate to construe the Tort Claims Act liberally. *Salcedo v. El Paso Hospital District,* 659 S.W.2d 30 (Tex.1983).

### B. THE "... METHOD OF PROVIDING POLICE ... PROTECTION" CLAIM

■ The County argues that it is immune from liability because the Texas Tort Claims Act § 101.055 says that there is no waiver of governmental immunity for the failure to provide or method of providing police or fire protection. In support of its position the County has directed the Court's attention to *Davis v. County of Lubbock,* 486 S.W.2d 109 (Tex.Ct.App.—Amarillo 1972—no writ history).

*Davis* and *Strickland v. City of Denver City,* 559 S.W.2d 116 (Tex.Ct.App.—Eastland 1977—no writ history) both held that governmental agencies were immune from suits by jailed inmates because of the "police protection" provision cited above. The vitality of both these cases was sapped by the Texas Supreme Court in *State v. Terrell,* 588 S.W.2d 784 (Tex.1979). In *Terrell,* Chief Justice Greenhill writing for a unanimous court drew the distinction between a governmental unit's making or not making a policy decision and the negligent implementation of a policy decision. The *Terrell* court held that the governmental unit was not liable for failing to have a policy but could be liable for the negligent implementation of a policy decision.

The recent case of *City of Waco v. Hester*, 805 S.W.2d 807 (Tex.Ct.App.—Waco 1990—writ denied) applied the *Terrell* reasoning to a jail assault case. The *Waco* case said "[t]he police protection exemption only applies to claims arising out of negligent formulation of governmental policy, not out of negligent implementation of formulated policy." *Id.* at 812.

Mutrux and Trejo take inconsistent positions with respect to whether or not the County has a policy addressing potential jail suicides. In their Response to Defendant's Motion for Partial Summary Judgment (page 8) they say "[n]evertheless, Cameron County does not have a written policy for dealing with potential or known suicidal inmates." Yet on page 12 they describe the County policy in some detail. The Court, conscious of its Fed.R.Civ.Proc. 56 obligation to review all the filings has reviewed all the depositions and other summary judgment evidence presented by the parties.

Carlos Tapia, chief deputy sheriff for operations, was deposed on June 7, 1990. One can deduce from this deposition that Mr. Tapia's responsibilities cover management of the jail. Reviewing Carlos Tapia's deposition carefully shows that Cameron County subscribes to standards promulgated by the Texas Commission on Jail Standards (Tapia deposition pages 27–28) which require that those who have demonstrated suicidal tendencies be segregated and kept under close scrutiny. Clearly, Cameron County has a policy dealing with potentially suicidal inmates. A fact question remains as to whether or not that policy was negligently implemented in this case.

## C. DID THIS CASE ARISE OUT OF THE USE OR MISUSE OF REAL OR PERSONAL PROPERTY SO AS TO FALL UNDER THE LIMITED WAIVER OF IMMUNITY PROVISIONS OF THE TEXAS TORT CLAIMS ACT.

■ Cameron County argues that Mutrux and Trejo's claims should be dismissed because they don't fit the limited waiver of immunity of the Texas Tort Claims Act. Texas has waived sovereign immunity in three areas: use of motor vehicles; use or misuse of real property; and use or misuse of personal property § 101.021 Texas Tort Claims Act. This case does not involve a motor vehicle.

Interpretation of § 101.021 has been the most troublesome area of Tort Claims Act jurisprudence. The Texas Legislature has not accepted the Texas Supreme Court's invitation to clarify its meaning. *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex.1976).

Recently the Texas Supreme Court held that non-use of personal property could lead to liability under the Texas Tort Claims Act. *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169 (Tex.1989). At this juncture, this Court is of the opinion that the non-use of more secure facilities which are apparently present at the Cameron County jail (e.g. padded cell) raises sufficient fact issues so as to preclude summary judgment.

## D. DOES THE FACT THAT MUTRUX'S DEATH RESULTED FROM SUICIDE BAR PLAINTIFF'S CLAIMS?

■ The County argues that § 93.001 Tex.Civ.Prac. & Rem.Code constitutes an affirmative defense. This 1987 enactment states that suicide is an affirmative defense to a death case. The Texas Legislature added an important qualification to this general statement in § 93.001(a)(2) when it said "provided, however, if the suicide or attempted suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense."

The County had cited no authority to support its contention that § 93.001 would bar this suit, *Diggles v. Horwitz*, 765 S.W.2d 839 (Tex.Ct.App.—Beaumont 1989—writ denied).

This Court having found there to be a material fact dispute in this case which could well call into play the proviso in § 93.001(a)(2) *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), accordingly ORDERS that Cameron

County's Motion for Partial Summary Judgment be DENIED.