TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00739-CV






City of Temple, Appellant



v.



Stephan Peterson, Individually and as Representative of the Estate

of Hilda Peterson, Deceased, Appellee





FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT


NO. 164,806-C, HONORABLE WILLIAM BLACK, JUDGE PRESIDING






 Stephan Peterson sued the City of Temple in a wrongful-death action based on a
provision in the Texas Tort Claims Act relating to "9-1-1 Emergency Service." See Tex. Civ.
Prac. & Rem. Code Ann. §§ 101.021, .062 (West 1997). The district court denied the City's
motion for summary judgment, urged on a defense of sovereign immunity. The City appeals on
an interlocutory basis. See id. § 51.014(5) (West Supp. 1998). We will affirm the summary-judgment order.


THE CONTROVERSY


 In the early morning hours of August 6, 1996, Stephan Peterson's wife Hilda had
a severe asthma attack. Peterson's call to the City's 9-1-1 service was answered by dispatcher
Ann Brown. Peterson asked Brown to send an ambulance to his residence at 110 West Young. 
Brown told Peterson that her computer listed his address as 110 East Young, not West Young. 
Peterson indicated the computer was inaccurate and reiterated that he lived on West Young. He
told Brown "we've been through this" before with the City. Peterson then gave Brown detailed
directions to his home on West Young and urged her to hurry because the situation was serious. 
 Notwithstanding Peterson's directions, Brown dispatched a fire truck and an
ambulance to 110 East Young. This was in fact the wrong address: Peterson lived on West
Young. When no ambulance arrived, Peterson called 9-1-1 and again urged Brown to send an
ambulance to 110 West Young. His home was close to a fire-department facility, and Young
could not understand why the ambulance had not arrived. Brown assured him help was on the
way. A few minutes later, Peterson called again, sounding more frantic. He repeated that he
lived on West Young and again gave detailed directions to his home. Peterson called a fourth
time and informed the dispatcher that his wife had gone into "arrest." Peterson called 9-1-1 five
times in a period of ten minutes. When the ambulance finally arrived, Hilda Peterson was dead.

 Brown initially dispatched the ambulance to the wrong address. Although Peterson
called back repeatedly to say that he lived on West Young, Brown never changed her erroneous
instructions to the ambulance personnel. An emergency-medical technician from the ambulance
eventually called Brown, uncertain about the address she had given. Rather than informing the
technician about the possible mix-up, Brown repeated her instructions to an East Young location. 
The ambulance continued to search for the Peterson residence on East Young.

 As Peterson continued to call 9-1-1, the ambulance eventually arrived at 110 East
Young. The ambulance technician discovered it was the wrong address and again called Brown
asking for help. Brown falsely told the technician that Peterson told her he lived on East Young;
that Peterson had called four times insisting he lived on East Young. She told the technician--in
direct contradiction of her statement to Peterson--that her computer showed that Peterson lived on
West Young.

 The technician immediately told Brown they were going to West Young. When
they arrived at the Peterson home, Hilda Peterson was dead.

 Peterson filed a wrongful-death action against the City. The City moved for
summary judgment, based on a defense of sovereign immunity. The trial court denied the motion. 
The City appeals.


DISCUSSION AND HOLDINGS


 Under the doctrine of sovereign immunity, a governmental unit is not liable for the
torts of its officers or agents in the absence of a constitutional or statutory provision creating such
liability. State v. Terrell, 588 S.W.2d 784, 785-86 (Tex. 1979). The Texas Tort Claims Act
("TTCA") creates a limited waiver of sovereign immunity. See Tex. Civ. Prac. & Rem. Code
Ann. § 101.021 (West 1997). For immunity to be waived under the TTCA, the claim must arise
under one of three specific areas of liability for which immunity is waived, and the claim must
not fall under one of the exceptions from waiver. Alvarado v. City of Brownsville, 865 S.W.2d
148, 155 (Tex. App.--Corpus Christi 1993), rev'd on other grounds, 897 S.W.2d 750 (Tex. 1995).

 Peterson's claim arises under section 101.062 of the TTCA, dealing specifically
with 9-1-1 telephone service. That section provides as follows:


(b) This chapter applies to a claim against a public agency that arises from an
action of an employee of the public agency or a volunteer under direction of the
public agency and that involves providing 9-1-1 service or responding to a
9-1-1 emergency call only if the action violates a statute or ordinance
applicable to the action.



Tex. Civ. Prac. & Rem. Code Ann. § 101.061 (West 1997) (emphasis added). Thus,
governmental immunity is not waived in relation to Brown's actions unless they violated an
applicable ordinance. See Fernandez v. City of El Paso, 876 S.W.2d 370, 376 (Tex. App.--El
Paso 1993, writ denied). The only question on appeal is whether Brown did not, as a matter of
law, violate a City ordinance--the conclusion necessary to sustain the City's motion for summary
judgment.

 Peterson contends disputed issues of material fact preclude summary judgment on
the City's contention that Brown did not, as a matter of law, violate a City ordinance. Section
1-11 of City ordinance 1706, entitled "Standard of care for emergency action," pertains to the
case. (1) Under the ordinance, Brown was authorized to act or not act "to effectively deal with the
emergency." Her acts and omissions were "effective" if in any way they might have contributed
or "reasonably be thought to" have contributed to preserving life; and Brown's acts and omissions
are not within the waiver of sovereign immunity if they amounted to a mere "failure to use
ordinary care in [the] emergency." The express purpose of the ordinance is "to assure effective
action in emergency situations" by preserving immunity for simple negligence.

 To establish its sovereign-immunity defense, the City was obliged to establish that
ordinary minds could not differ on the conclusion that Brown's actions and inactions were
"effective" in the sense of the ordinance, notwithstanding that the trial court was obliged to take
as true any facts contained in the summary-judgment record that are favorable to Peterson's claim,
indulging every inference and resolving every doubt in his favor. Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Bean v. Bluebonnet Sav. Bank, 884
S.W.2d 520, 522 (Tex. App.--Dallas 1994, no writ).

 The City's summary-judgment proof showed (1) Brown dispatched the emergency
personnel to an address she believed was correct; (2) the personnel eventually arrived at the
correct address; and (3) Brown believed her actions were helping preserve Hilda Peterson's life. 
The City argues that Brown's deposition testimony establishes without contradiction that she
thought her directions to the emergency units, initially and thereafter, contributed to preserving
Hilda Peterson's life. The City argues further that her acts and omissions cannot be classified as
ineffective merely because she should have taken a different course of action.

 Peterson's summary-judgment proof showed (1) Brown was unfamiliar with the
geography of the City, with the computer system, and the policies and procedures applicable to
emergencies such as that reported by Peterson; (2) she received no training on the unfamiliar
equipment; (3) she dispatched the emergency personnel to an East Young address; (4) when asked
by the emergency technician if the emergency was on West Young, she replied falsely that
Peterson had told her East Young; and (5) the emergency personnel arrived at the proper address
on West Young because they eventually disregarded Brown's directions.

 We do not construe the protective provisions of the ordinance as being dependent
upon the actor's unqualified subjective "belief"; instead the protection of the City and its
employees must be based upon a reasonable belief that the actor's actions contribute to preserving
life. So much is expressly stated in the words of the ordinance and emphatically implied in the
city commission's expressed intention to protect itself and its employees only to the extent they
exercise ordinary care. Under the review strictures of Mr. Property Management Co., 690
S.W.2d at 548-49, we hold that ordinary minds could differ on whether Brown reasonably thought
her actions contributed to preserving Hilda Peterson's life.

 We therefore affirm the summary-judgment order of the district court.



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: June 4, 1998

Do Not Publish
1. The ordinance declares as follows:


Sec. 1-11. Standard of care for emergency action


Every [provider of emergency services] is hereby authorized to act or not to act in such
a manner to effectively deal with the emergency. Any action or inaction is "effective" if
it in any way contributes or can reasonably be thought to contribute to preserving any lives
or property. . . . Neither the city nor the employee . . . shall be liable for the failure to use
ordinary care in such emergency. It is the intent of the city commission, by passing this
ordinance, to assure effective action in emergency situations . . . by protecting [the city
and its employees] from nonintentional tort liability to the fullest extent permitted by
statutory and constitutional law. This section shall be liberally construed to carry out the
intent of the city commission.



ment.

 Peterson contends disputed issues of material fact preclude summary judgment on
the City's contention that Brown did not, as a matter of law, violate a City ordinance. Section
1-11 of City ordinance 1706, entitled "Standard of care for emergency action," pertains to the
case. (1) Under the ordinance, Brown was authorized to act or not act "to effectively deal with the
emergency." Her acts and omissions were "effective" if in any way they might have contributed
or "reasonably be thought to" have contributed to preserving life; and Brown's acts and omissions
are not within the waiver of sovereign immunity if they amounted to a mere "failure to use
ordinary care in [the] emergency." The express purpose of the ordinance is "to assure effective
action in emergency situations" by preserving immunity for simple negligence.

 To establish its sovereign-immunity defense, the City was obliged to establish that
ordinary minds could not differ on the conclusion that Brown's actions and inactions were
"effective" in the sense of the ordinance, notwithstanding that the trial court was obliged to take
as true any facts contained in the summary-judgment record that are favorable to Peterson's claim,
indulging every inference and resolving every doubt in his favor. Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Bean v. Bluebonnet Sav. Bank, 884
S.W.2d 520, 522 (Tex. App.--Dallas 1994, no writ).

 The City's summary-judgment proof showed (1) Brown dispatched the emergency
personnel to an address she believed was correct; (2) the personnel eventually arrived at the
correct address; and (3) Brown believed her actions were helping preserve Hilda Peterson's life. 
The City argues that Brown's deposition testimony establishes without contradiction that she
thought her directions to the emergency units, initially and thereafter, contributed to preserving
Hilda Peterson's life. The City argues further that her acts and omissions cannot be classified as
ineffective merely because she should have taken a different course of action.

 Peterson's summary-judgment proof showed (1) Brown was unfamiliar with the
geography of the City, with the computer system, and the policies and procedures applicable to
emergencies such as that reported by Peterson; (2) she received no training on the unfamiliar
equipment; (3) she dispatched the emergency personnel to an East Young address; (4) when asked
by the emergency technician if the emergency was on West Young, she replied falsely that
Peterson had told her East Young; and (5) the emergency personnel arrived at the proper address
on West Young because they eventually disregarded Brown's directions.

 We do not construe the protective provisions of the ordinance as being dependent
upon the actor's unqualified subjective "belief"; instead the protection