TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00774-CV






Chester William Ingram, Jr., M.D., Appellant



v.



Wayne Scott, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-02199, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING






 Appellant Chester William Ingram, Jr. appeals the district court's granting of
summary judgment in favor of appellee Wayne Scott, executive director of the Texas Department
of Criminal Justice (the Department). We will reverse the district court's judgment and remand
the cause for further proceedings.

 Ingram is an inmate in the custody of the Department. He sued Scott in Scott's
personal and official capacities, alleging Scott was violating section 501.008 of the Texas
Government Code, (1) which governs the Department's development of a system to handle inmate
grievances. See Tex. Gov't Code Ann. § 501.008 (Tex. 1998). Ingram filed a brief in support
of his petition for writ of mandamus and attached to his brief twenty-six exhibits, mainly
consisting of denied inmate grievances.

 Scott and Ingram both moved for summary judgment. The trial court granted
Scott's motion and denied Ingram's. Ingram appeals, arguing the court erred (1) in granting
Scott's motion because a material issue of fact existed, (2) in not granting Ingram's motion for
summary judgment, and (3) in not compelling Scott to comply with Ingram's discovery requests. 


Standard of Review


 A mandamus action initiated in a trial court is subject to appeal as any other civil
suit. See Anderson v. City of Seven Points, 806 S.W.2d 791, 792 n.1 (Tex. 1991); University of
Tex. Law Sch. v. Texas Legal Found., 958 S.W.2d 479, 481 (Tex. App.--Austin 1997, no writ). 
Therefore, we do not review a trial court's granting or denial of summary judgment under the
abuse of discretion standard applicable to mandamus actions initiated in appellate courts; instead
we review such decisions under standards generally applicable to motions for summary judgment
in other civil suits. See University of Tex. Law Sch., 958 S.W.2d at 481.

 Summary judgment is properly granted only when the movant establishes that there
are no genuine issues of material fact to be decided and that he is entitled to judgment as a matter
of law. See Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.
1991); Memorial Med. Ctr. v. Howard, 975 S.W.2d 691, 692 (Tex. App.--Austin 1998, pet.
denied). A defendant seeking summary judgment must negate as a matter of law at least one
element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each
element of an affirmative defense. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995). If the defendant produces evidence establishing his right to summary judgment, the burden
shifts to the plaintiff to present evidence raising a fact issue. See id.

 In reviewing the grant of summary judgment, we view the evidence in the light
most favorable to the non-movant and make every reasonable inference and resolve all doubts in
favor of the non-movant. See id.; Nixon v. Mr. Property Management Co., 690 S.W.2d 546,
548-49 (Tex. 1985); Howard, 975 S.W.2d at 693. When the trial court's order granting summary
judgment does not specify the grounds relied upon, we will affirm the judgment if it is supported
by any of the grounds put forth by the movant. See Bradley v. State ex rel. White, 990 S.W.2d
245, 247 (Tex. 1999); Howard, 957 S.W.2d at 693.


Did the trial court err in granting Scott's motion for summary judgment?


 Scott moved for summary judgment on the grounds that (1) Ingram's claims had
no basis in law, (2) the complained-of procedures were not required to be in writing, (3) Ingram
raised no constitutional claims and therefore could not complain that prison regulations were being
violated, (4) Scott was protected by official immunity, and (5) Scott was protected by sovereign
immunity as far as he was sued in his official capacity. (2)

 Ingram complains in two points of error that the trial court erred in granting
summary judgment for Scott because Ingram at a minimum established the existence of a genuine
issue of material fact. Further, Ingram argues the defenses of official and sovereign immunity are
not appropriate defenses in this case. We will first examine whether Scott established the
affirmative defenses of official and sovereign immunity.

Is Scott shielded by official and sovereign immunity?

 Official immunity is an affirmative defense, and the defendant has the burden to
establish all the elements of the defense. See City of Lancaster v. Chambers, 883 S.W.2d 650,
653 (Tex. 1994). A government employee is entitled to official immunity from suit arising from
the performance of (1) his discretionary duties, as opposed to ministerial acts, (2) in good faith
as long as (3) he is acting within the scope of his authority. See id. A ministerial act is one
prescribed and defined by the law with such precision and certainty as to leave nothing to the
exercise of discretion or judgment. See id. at 654. In other words, an action involving personal
deliberation, decision, and judgment is discretionary; an action requiring obedience to orders or
the performance of a mandatory duty is ministerial. See id.

 In his motion for summary judgment, Scott asserted his entitlement to the defense
of official immunity and set out the elements of the defense. Scott then stated, "Because [Ingram]
cannot prove that any statutes, rules, or procedures are being violated, Defendant Scott is entitled
to official immunity." 

 It was Scott's burden to establish his entitlement to official immunity. See id. at
653. Scott presented no evidence or argument to establish the elements of the defense. His
conclusory statement that he is entitled to the defense because Ingram could not prove a statutory
violation does not address the elements of official immunity and does not meet his burden.

 Further, the defense of official immunity is inapplicable here, where Ingram is
seeking to compel Scott to perform a non-discretionary act. Section 501.008(b) requires that the
Department's grievance system "must provide procedures . . . for an inmate to identify evidence
to substantiate the inmate's claim." Tex. Gov't Code Ann. § 501.008(b) (emphasis added). 
While Scott has discretion to decide the structure of those procedures, it is mandatory that such
procedures be in place. Official immunity is not a defense to a suit arising out of the non-performance of a ministerial act. See Chambers, 883 S.W.2d at 653. Scott has not demonstrated
that summary judgment is proper based on the affirmative defense of official immunity.

 In asserting sovereign immunity as a defense, Scott again set out the basic rules of
law governing the doctrine and asserted his entitlement to the defense to the extent he was sued
in his official capacity. Ingram argued that, because he was not seeking monetary damages,
sovereign immunity should not apply.

 Initially, we note Scott did not establish his entitlement to the defense of sovereign
immunity. Furthermore, we do not believe Scott established that sovereign immunity could apply
to this case. Under the doctrine of sovereign immunity, the State is not subject to suit or liable
for damages caused by torts committed by its officers or agents in the absence of a constitutional
or statutory provision creating such liability. See State v. Terrell, 588 S.W.2d 784, 785 (Tex.
1979). State employees acting in their official capacities are also shielded. See Bagg v.
University of Tex. Med. Branch, 726 S.W.2d 582, 586 (Tex. App.--Houston [14th Dist.] 1987,
writ ref'd n.r.e.).

 Ingram did not seek damages from Scott or allege Scott had committed a tort. 
Ingram's claims are not the sort against which sovereign immunity should shield Scott. Scott
cannot, as a public official, refuse to comply with a mandatory statutory obligation and then claim
he is protected from a suit seeking to compel his compliance. Scott did not demonstrate his
entitlement to sovereign immunity and the trial court's granting of summary judgment could not
properly have rested upon that affirmative defense.


Did Scott establish he was entitled to summary judgment on the merits of Ingram's claims?

 Ingram sought to compel Scott to comply with section 501.008(b)(1) of the Texas
Government Code, which requires the Department to provide procedures for inmates to identify
evidence to substantiate their claims. (3) See Tex. Gov't Code Ann. § 501.008(b)(1). Ingram
complained that no such procedures were in place. 

 Attached to Ingram's petition were the following exhibits: a letter from Ingram to
Scott asking him to direct the warden of the Coffield Unit to comply with section 501.008; letters
from Ingram and Ingram's sister to Scott asking Scott to furnish them with copies of the
procedures under which inmates could identify substantiating evidence; and twenty-two exhibits
consisting of denied inmate grievances. The reasons given for denying the grievances are short
and without significant explanation, generally stating a Department officer had explained or denied
the alleged incidents. In denying appeals of the grievances, the decision maker usually stated,
"You have provided nothing at this level to justify further inquiry of the matter." On at least two
forms, Ingram asked for the procedures mandated by section 501.008; neither form's response
indicates Ingram was provided with the procedures. One form contains the reply, "THIS IS NOT
A GRIEVANCE BUT A REQUEST FOR A GRIEVANCE PROCEDURE. IN THE FUTURE
SEND YOUR REQUEST IN THE FORM OF AN I 60 YOU'LL RECIEVE [sic] YOUR
REQUEST IN A MORE TIMELY MANNER."

 Scott moved for summary judgment on the grounds that Ingram's "allegations that
[the Department] is not complying with section 501.008 of the Texas Government Code are
insufficient to carry [Ingram's] evidentiary burden." Scott's motion for summary judgment
argued as follows:


[Ingram] further alleges that Defendant Scott is not in compliance with
§ 501.008(b)(1) because there are no written procedures implementing
§ 501.008(b)(1). However, the statute does not require the procedures to be
written. It only requires that the grievance system must provide procedures for an
inmate to identify evidence to substantiate the inmate's claim. Inmates are advised
of the grievance process and procedure in their offender handbook which they
receive upon their first commitment to a [Department] unit.


. . . .


The current grievance procedure allows all grievance allegations to be thoroughly
investigated and substantiated if there is evidence. . . . The grievance officer
thoroughly investigates the inmate's allegations and substantiates them if evidence
is found. Therefore, the current inmate grievance procedures fully and completely
comply with § 501.008 of the Texas Government Code.


. . . . 


[Ingram] alleges violations of [Department] policy. Specifically, [Ingram] claims
that [Scott] violated a [Department] directive by not investigating grievances. 
[Ingram] characterizes the failure to follow policy as an abuse of authority. 
Violations of prison regulations, without more, does [sic] not state a constitutional
violation. An assertion that prison officials failed to follow departmental
regulation must, on its own merit, state a constitutional claim. [Ingram] has not
shown a corresponding violation of his constitutional rights with respect to his
claims that prison regulations were not followed.



(Internal citations omitted.)

 As supporting evidence, Scott attached (1) a May 21, 1989 order of the courts of
the Eastern and Southern District of Texas stating the courts had certified the Department's
grievance procedure, (4) and (2) an affidavit by Jane Cockerman, assistant administrator of the
Department's inmate grievance procedure, in which she set out the framework of the procedure
and stated, "The procedure which exists for an offender to identify evidence to substantiate his
claim is through written formal grievance with attachments."

 Ingram responded to Scott's motion, arguing that procedures for identifying
substantiating evidence must be in writing. Ingram took issue with Scott's explanation of the
grievance procedure, specifically criticizing Scott's statement that grievance investigators may,
acting under their discretion, interview witnesses, obtain documents, or view other information. 
Ingram argued that if the unwritten procedures leave the examination of substantiating evidence
to an investigating officer's discretion, they run afoul of section 501.008(b)'s mandatory language
that the Department must provide such procedures. Ingram alleged that a grievance investigator
told Ingram that he did not personally investigate all the inmate grievances he received. Instead,
the investigator sent forms to supervisors, who chose whether to review statements, records, or
other evidence. The investigator looked through his procedures manual and was unable to find
procedures governing substantiating evidence. Ingram stated, "Assuming, arguendo, that the
requisite policy does exist, it is not in writing and not known to inmates or [Department]
Grievance Investigators, or if in writing, it is so badly written that a reasonable person can not
discern its meaning or mechanism. Therefore it does not comply with [section] 501.008." 

 Ingram objected to Cockerman's affidavit on the grounds it was not written from
personal knowledge and contained conclusory statements, and argued her affidavit admitted that
no procedure for identifying evidence existed. Ingram further alleged that he never received the
offender orientation handbook to which Scott referred in his motion for summary judgment. 
Finally, Ingram stated he made no constitutional claims.

 Ingram attached as evidence to his response to Scott's motion an executive directive
written by Scott that describes the development and annual review of procedures and policies (ED-01.21). ED-01.21 defines various rules, policies, directives, and procedures governing operations
of the Department and its facilities. ED-01.21 states that Board Rules shall be "published in the
Texas Administrative Code," Board Policies are signed by the Department chairman and
"distributed by Executive Services," Executive Directives are signed by the executive director and
distributed by Executive Services or the Human Resources department, and Administrative
Directives are "distributed by Executive Services." Further, ED-01.21 defines Division
Directives and Operational Procedures, referring as examples to specific directives and procedures
and their location in manuals. ED-01.21 explains that new or changed policies shall be proposed
by "sending the proposal in writing." If policies are revised or added, a draft is distributed for
review and notice of the final policy is sent out via electronic mail. Finally, ED-01.21 provides
as follows: each policy is reviewed annually; the Departmental Policy and Operations Manual
"includes selected board rules and all board policies, executive directives, and administrative
directives"; the Personnel Manual "includes selected board rules and board policies that relate to
human resources and all executive directives that are also known as personnel directives"; and
each division or department reviews, maintains, and distributes its own policies and procedures
and keeps its Division and Operational Manual current with Executive Services.

 Ingram attached as evidence his affidavit in which he recites the subject of his
alleged conversation with the grievance investigator and their search for procedures in the manual. 
Ingram states that he and the investigator "both looked at [the investigator's] policy and procedure
manual but neither could identify any such procedure. [The investigator] admitted that no such
procedure exists as far as he could tell. He did not know of any procedure for an inmate to
identify evidence to substantiate the inmate's claim."

 Finally, Ingram attached as evidence a grievance form that Ingram claimed showed
a key witness was never interviewed. The grievance form allows an inmate to set out (1) how and
when informal resolution was attempted, (2) details of the grievance, including "documentation,
name of any witnesses supporting [the] claim and date of incident," and (3) action requested. The
inmate named several witnesses, including Department personnel. The Department denied the
grievance and the inmate appealed, stating the main witness was never contacted about the
incident. The inmate alleged no investigation was done and he continued to have the same
problem. The appeal was denied based on Department records and statements by two Department
employees. 

 In reviewing the granting of summary judgment for Scott, we view the evidence
and arguments in the light most favorable to Ingram. See Centeq Realty, 899 S.W.2d at 197;
Nixon, 690 S.W.2d at 548-49; Howard, 975 S.W.2d at 693. Viewed in this light, Scott's motion
and evidence do not establish his entitlement to judgment as a matter of law.

 Scott's grounds for seeking summary judgment boil down to the argument that the
procedures need not be in writing under the statute. However, Scott produced no evidence that
the Department has any unwritten procedures, such as Scott's affidavit or the affidavit of any other
Department employee with knowledge of such unwritten procedures. Moreover, Scott did not
produce any evidence that these specific unwritten procedures exist. In fact, his motion for
summary judgment does not even go so far as to actually allege that the procedures exist in an
unwritten form. Cockerman's explanation of the grievance process does not establish as a matter
of law that any procedures for identifying evidence are in place. Simply asserting that the statute
does not explicitly require the procedures to be in writing does not entitle him to summary
judgment on the merits of Ingram's claims. 

 Furthermore, we believe Scott's contention that the procedures do not have to be
in writing flies in the face of common sense. The Department employs people across Texas. It
has personnel manuals, policy and operations manuals, and division and operational manuals
containing a myriad of regulations and procedures governing an inmate's life. Proposed changes
or additions to Department policies must be submitted in writing and go through a substantial
review and editing process. Section 2001.004 of the Administrative Procedure Act (the APA)
requires agencies to adopt "rules of practice stating the nature and requirements of all available
formal and informal procedures," and to make available to the public "all rules and other written
statements of policy or interpretations that are prepared, adopted, or used by the agency in
discharging its functions." Tex. Gov't Code Ann. § 2001.004(1), (2) (West Supp. 2000). The
Texas Administrative Code provides that "[state jail facility] administrators shall ensure that there
is a written offender grievance procedure that is made available to all offenders which includes
at least one level of appeal." 37 Tex. Admin. Code § 157.39(11) (West 1999). While we
recognize that neither the APA nor section 157.39(11) applies to this division of the Department,
see Tex. Gov't Code Ann. § 2001.226, we believe they support our view that Department
procedures must be in writing. To argue that a statutorily-mandated procedure need not be written
but instead could be passed along by word of mouth or in some other manner is nonsensical.

 We hold that Scott's motion for summary judgment was insufficient to entitle him
to judgment on Ingram's claims. We sustain Ingram's second and third points of error.


Did the trial court err in denying Ingram's motion for summary judgment?


 Ingram filed his own motion for summary judgment, in which he alleged that Scott
had not answered Ingram's requests for admissions, resulting in the requests being deemed
admitted. Ingram attached as evidence the unanswered requests for admissions and the certified
mail receipt showing the discovery requests were received by Scott's attorney, Scott's answers
to Ingram's first set of interrogatories, and Scott's response to Ingram's request for production. 
Ingram contends the trial court should have granted summary judgment in his favor because
Scott's deemed admissions proved Ingram's claims.


Claims based on section 501.008(a)

 Ingram requested in his motion that he be granted summary judgment on his claim
that "Scott is not in compliance with applicable portions of 42 USC § 1997e which is referenced
in [section] 501.008." However, section 1997e no longer requires states to meet minimum
standards for grievance procedures. See 42 U.S.C.A. § 1997e. Thus, section 501.008(a) of the
Government Code is of no effect as far as it requires a grievance procedure to be certified under
section 1997e. Ingram abandoned his claims based on section 501.008(a) and was not entitled to
judgment as a matter of law on his assertion that the grievance procedures are not in compliance
with sections 1997e and 501.008(a).


Claims based on section 501.008(b)

 Ingram alleged he was entitled to judgment as a matter of law under section
501.008(b) and asked the district court to issue a writ of mandamus ordering Scott to comply with
that section.

 When a party does not timely answer requests for admissions, those admissions are
deemed admitted and the party is precluded from offering summary judgment proof contrary to
those admissions. See Tex. R. Civ. P. 198.2(c); Crowley v. Coles, 760 S.W.2d 347, 349 (Tex.
App.--Houston [1st Dist.] 1988, no writ). No court order is necessary for the requests to be
considered admitted. See Tex. R. Civ. P. 198.2(c). The trial court may allow the party to
withdraw the admission if the party so moves, showing good cause for the withdrawal and that
the opposing party will not be unduly prejudiced by the withdrawal. See Tex. R. Civ. P. 198.3. 
Scott failed to answer Ingram's requests, made no motion to withdraw the deemed admissions,
and did not respond to Ingram's motion for summary judgment, which is based in large part on
Scott's deemed admissions. (5) We conclude Ingram's requests should be deemed admitted.

 The admissions Scott is deemed to have admitted include the following statements: 
"[t]here is no written procedure for an inmate to identify evidence to substantiate the inmate's
claim in the prison grievance procedure in Texas as required by § 501.008(b)(1) of the Texas
Government Code"; "Board Policy 3.77 contains no rule or procedure for an inmate to identify
evidence with which to substantiate the inmate's claim"; "Administrative Directive 03.82 contains
no rule or procedure for an inmate to identify evidence with which to substantiate the inmate's
claim"; and "[a] procedure for an inmate to identify evidence to substantiate the inmate's claim
is not clearly explained in writing such that it is clear to a reasonable person exactly what that
procedure is."

 A writ of mandamus is an extraordinary remedy and will issue to compel a public
official to perform a nondiscretionary act. See City Council of Austin v. Save Our Springs
Coalition, 828 S.W.2d 340, 342 (Tex. App.--Austin 1992, no writ). A relator seeking mandamus
under the common law must establish (1) the respondent has a legal duty to perform the
nondiscretionary act, (2) a demand was made for performance of the act, and (3) the respondent
refused to perform the act. See Stoner v. Massey, 586 S.W.2d 843, 846 (Tex. 1979); City
Council of Austin, 828 S.W.2d at 342-43.

 The deemed admissions clearly establish as a matter of law that Ingram's contention
that section 501.008(b)(1), a nondiscretionary act, is being violated. Ingram was entitled to
judgment as a matter of law on his section 501.008(b) claims. We sustain Ingram's first point of
error on his section 501.008(b) claims.


Conclusion


 We sustain Ingram's first, second, and third points of error. Based on our
disposition of those points of error, it is not necessary for us to address his fourth point of error. 
We reverse the district court's judgment granting summary judgment for Scott. We remand the
cause to the district court with instructions to grant summary judgment in Ingram's favor and to
issue a writ of mandamus requiring Scott to comply with section 501.008(b) of the Texas
Government Code.



 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson.

Reversed and Remanded

Filed: May 11, 2000

Publish
1. In July 1997, Ingram filed a petition for writ of mandamus with the supreme court, which
denied his petition for lack of jurisdiction. Ingram then filed a petition for writ of mandamus in
the district court of Walker County, which transferred the cause to Travis County. 
2. Before filing his motion for summary judgment, Scott sought to have Ingram's suit
dismissed as frivolous under section 14.003 of the Texas Civil Practice and Remedies Code. See
Tex. Civ. Prac. & Rem. Code Ann. § 14.003(a)(2) (West Supp. 2000). Ingram pointed out that
his suit, while brought pro se, was not brought in forma pauperis and therefore was not subject
to dismissal under section 14.003. See id. § 14.002(a). 
3. In relevant part, section 501.008 reads as follows:


(a) The department shall develop and maintain a system for the resolution of
grievances by inmates housed in facilities operated by the department or under
contract with the department that qualifies for certification under 42 U.S.C.
Section 1997e and the department shall obtain and maintain certification under
that section. . . . 


(b) The grievance system must provide procedures:


 (1) for an inmate to identify evidence to substantiate the inmate's claim; and 


 (2) for an inmate to receive all formal written responses to the inmate's
grievance.


Tex. Gov't Code Ann. § 501.008. 


 Initially, Ingram also complained Scott was violating section 501.008(a). When Scott
pointed out that section 1997e had been amended so as to render Ingram's section 501.008(a)
complaints moot, Ingram abandoned those claims. See 42 U.S.C.A. § 1997e (West Supp. 1999). 
In Scott's motion for summary judgment, he again attacked Ingram's section 501.008(a)
complaints; Ingram reiterated that those claims had been abandoned.
4. The inclusion of the certification order only answered Ingram's abandoned claims that the
grievance system was not certified, thus violating section 501.008(a) of the Government Code. 
5. Ingram filed his appellant's brief on January 24, 2000, and on April 10, 2000, filed a
motion to strike any brief filed by Scott as untimely filed. The case came under submission on
April 24, 2000, and no appellee's brief has yet been filed. We dismiss Ingram's motion to strike
as moot.



ry act, (2) a demand was made for performance of the act, and (3) the respondent
refused to perform the act. See Stoner v. Massey, 586 S.W.2d 843, 846 (Tex. 1979); City
Council of Austin, 828 S.W.2d at 342-43.

 The deemed admissions clearly establish as a matter of law that Ingram's contention
that section 501.008(b)(1), a nondiscretionary act, is being violated. Ingram was entitled to
judgment as a matter of law on his section 501.008(b) claims. We sustain Ingram's first point of
error on his section 501.008(b) claims.