# Supreme Court of Texas

No. 19-1144

City of San Antonio,

*Petitioner*,

v.

Jimmy Maspero and Regina Maspero, Individually and as Next Friends of W.M., W.M., W.M., Deceased, and W.M., Deceased, Minor Children,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued September 28, 2021**

JUSTICE LEHRMANN delivered the opinion of the Court.

This case concerns waiver of governmental immunity under the Texas Tort Claims Act when innocent bystanders suffer harm during a police chase. The plaintiffs, respondents in this Court, contend that their injuries arose from a San Antonio police officer's vehicular pursuit of a fleeing suspect who crashed into their car. They sued the City pursuant to Section 101.021 of the Act, which waives governmental immunity when an injury "arises from the operation or use" of a motor

vehicle by a governmental employee. TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). The City filed a plea to the jurisdiction, arguing that the officer's actions were too attenuated from the plaintiffs' injuries to satisfy Section 101.021(1)(A) and that, in any event, the emergency exception in Section 101.055(2) of the Act forecloses its application because the officer's actions were not reckless and did not violate applicable laws or ordinances.

The trial court granted the City's plea to the jurisdiction. The court of appeals reversed, holding the City's immunity was waived. After reviewing the record, we agree with the trial court and hold that the plaintiffs' claims are barred by sovereign immunity. Specifically, we hold that under the Act's emergency exception, the Act "does not apply to" the plaintiffs' claims and thus cannot waive the City's immunity from suit. *Id.* § 101.055(2). We also reject the court of appeals' holding that independent grounds exist to waive immunity from a claim for negligent implementation of policy. In light of those holdings, we do not reach or express any opinion on the issue of whether the plaintiffs' injuries arose from the officer's operation or use of a motor vehicle, as would be required to establish waiver of immunity under Section 101.021(1)(A) if the Act applied. We reverse the court of appeals' judgment and dismiss the plaintiffs' claims for lack of jurisdiction.

## I. Background

The incident at issue in this case arose from a 2012 joint task-force investigation of a drug-trafficking operation at a rural property on

Morin Road in San Antonio.[1] The task force's intelligence indicated that an illegal organization had received a large shipment of marijuana at the property for distribution. Further investigation revealed vehicles were frequently entering and exiting the property, consistent with drug trafficking.

The task force developed a plan that would allow potential suspects to be stopped without exposing the rest of the operation. Detectives in unmarked cars stationed themselves at the ranch, and uniformed San Antonio Police Department (SAPD) officers and Bexar County Sheriff's Office deputies were deployed in the surrounding area. When a vehicle left the Morin Road property, the detectives would trail the suspect vehicle, broadcast its description, location, and direction of travel, and then follow the vehicle until they observed a traffic violation. Uniformed officers would then stop and detain suspects far from the Morin Road property in order to avoid alerting others at the ranch. The plan did not specify what was to be done in the event that a suspect refused to pull over and fled.

On September 9, 2012, SAPD Officer Kimberly Kory was assigned to assist with the investigation. At around 4:30 p.m., she positioned herself at a Shell Station at Highway 16 and Loop 1604. Her supervisor, Sergeant Dominic Scaramozi, arrived shortly thereafter. Meanwhile, David Rodriguez entered the Morin Road property in a black Chevrolet

---

[1] The task force consisted of San Antonio Police Department detectives, Bexar County Sheriff's Office deputies, and High Intensity Drug Trafficking Area (HIDTA) officers. HIDTA includes officers from local, state, and federal agencies "whose goal is to work together to dismantle drug organizations and share information related to these organizations."

Suburban. When Rodriguez later exited the property, two detectives followed him and broadcast his description and license plate number. Officer Kory received the radio communication, left the Shell Station, and proceeded westbound on Loop 1604. Detectives broadcast that Rodriguez committed a traffic violation by failing to signal when changing lanes. Approximately one mile before IH-35, Officer Kory caught sight of Rodriguez's vehicle and activated her emergency lights and siren. Rodriguez initially slowed and seemed to pull over, but he then rapidly accelerated back into the main traffic lanes.

As noted, nothing in the record suggests that the task force provided officers with specific guidance about how they should respond to a fleeing suspect. However, the SAPD's "General Manual" contains detailed procedures governing vehicular pursuit of such suspects. Procedure 609 of the manual states, among other things, that "pursuits will not be initiated" for "[n]on-hazardous traffic violations," for "[t]raffic violations where the danger has passed," or when the "individuals fleeing are suspects only and the actual crime has not been determined." Further, officers must obtain "immediate authorization to continue the pursuit," and authorized pursuits of "[k]nown and felony offenders (other than Evading Arrest)" may be continued "depending on the hazardous circumstances and environmental factors."

When Rodriguez fled, Officer Kory immediately gave chase, following him down Loop 1604 and onto southbound IH-35. As she pursued him, Officer Kory radioed information about the Suburban's movements to Sergeant Scaramozi, who neither affirmatively authorized her to continue the pursuit nor instructed her to abandon it.

The parties highlight different aspects of the chase that ensued. The plaintiffs emphasize that traffic conditions were heavy and that the vehicles passed active school zones. They note that Officer Kory initially tried to keep pace with Rodriguez, swerving around eighteen-wheelers and speeding at close to 100 miles per hour.

The City emphasizes that Officer Kory slowed at two intersections Rodriguez sped through. For this reason, a gap grew between Officer Kory and Rodriguez, eventually causing her to temporarily lose sight of him near the Kinney Road exit on IH-35. At that point Officer Kory doubted she would catch Rodriguez, but she continued on, hoping to "maintain[] a line of sight" with him. Rodriguez reemerged heading south on the two-way access road adjacent to southbound IH-35 between Kinney Road and Shepherd Road. Officer Kory sped up and proceeded down the Shepherd Road exit ramp. While she was on the exit ramp, Rodriguez spun out twice, kicking up dust. Officer Kory continued to drive south on the access road towards him. When Rodriguez regained control, the Suburban was pointing north, and he headed back in that direction on the access road toward the Shepherd Road exit ramp.

From this point forward, the record is unclear as to whether Rodriguez intended to charge Officer Kory or evade apprehension. However, Automatic Vehicle Location (AVL) records indicate that Officer Kory never stopped driving toward Rodriguez, and she turned her car toward him immediately after he drove past her on the access road.

Meanwhile, north of Rodriguez and Officer Kory, the Maspero family was proceeding onto the southbound lane of the two-way access road at the Shepherd Road exit. As Rodriguez sped north on the access road, he drove past Officer Kory's patrol car, missing it, but collided with the Masperos' vehicle. A diagram in the crash report suggests that Rodriguez had moved into the southbound lane to pass another car, causing the head-on collision. The impact tragically caused Jimmy and Regina Maspero to sustain incapacitating injuries and killed two of their young children.

The record contains conflicting evidence as to whether, at the time of the crash, Officer Kory's siren remained activated as required by statute and SAPD policy. Officer Kory attested that her siren was activated throughout the chase. However, the SAPD Pursuit Evaluation Report of the incident states that she had activated her emergency lights but does not mention the siren, and a witness to the accident testified that he recalled seeing the emergency lights but did not recall hearing the siren.

The Masperos sued the City and several individuals, including SAPD Chief of Police William McManus, Officer Kory, and Sergeant Scaramozi,[2] asserting both state and federal causes of action. The defendants removed the case to federal court, which dismissed all claims against the individual defendants and remanded the remaining state-law negligence claims against the City. The City subsequently filed a plea to the jurisdiction asserting immunity from suit. It argued that the

---

[2] The Masperos also sued Rodriguez, and the claims against him were dismissed pursuant to settlement.

Masperos could not establish waiver of immunity under the Tort Claims Act because (1) no causal nexus exists between Officer Kory's operation or use of a motor-driven vehicle and the Masperos' injuries and (2) even if such a causal nexus exists, the Act's emergency exception preserves the City's immunity, as Officer Kory was responding to an emergency in accordance with applicable law.

In support of its plea, the City attached Officer Kory's and Sergeant Scaramozi's affidavits reflecting their accounts of the incident. It also included a report authored by its expert witness, former SAPD Chief of Police Albert Ortiz. In response to the plea, the Masperos included the SAPD Pursuit Evaluation Report, Officer Kory's and Sergeant Scaramozi's deposition testimony, the SAPD police report, the AVL records, the SAPD General Manual, the Texas Peace Officer's Crash Report, eyewitness testimony, and their own expert's report.

Following a hearing, the trial court granted the City's plea to the jurisdiction and dismissed the case, specifying in its order that (1) immunity is not waived under Section 101.021 of the Tort Claims Act because no nexus exists "between Officer Kory's police car and the tragic incident," and (2) Section 101.055 of the Act applies because "there is no fact issue on 'emergency situation' or conscious indifference/reckless disregard." The Masperos appealed, and the court of appeals reversed. 628 S.W.3d 476, 480 (Tex. App.—San Antonio 2019). First, the court of appeals held that because the evidence demonstrates that Officer Kory continued to pursue Rodriguez up until his collision with the Masperos' vehicle, the Masperos had adequately shown that their injuries "arose from" Officer Kory's use of her patrol car under Section 101.021(1)(A).

*Id.* at 482–83. Additionally, the court held that the Act's emergency exception is inapplicable because the evidence demonstrates that Officer Kory engaged in an unauthorized chase even when she suspected she could not catch Rodriguez. *Id.* at 483–84. Finally, the court concluded that Officer Kory's violation of SAPD procedure established an independent waiver of immunity from the Masperos' claim for negligent implementation of policy. *Id.* at 484–86.

The City petitioned this Court for review, arguing that its immunity was not waived because (1) the Masperos' injuries did not arise from Officer Kory's use or operation of her motor-driven vehicle as a matter of law, (2) the Masperos' claims did not arise from reckless conduct, triggering the Act's emergency exception, and (3) negligent implementation of policy does not give rise to an independent ground for waiver of governmental immunity.

## II. Standard of Review

Governmental units are immune from suit unless immunity is waived by state law. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). The Texas Tort Claims Act, at issue here, waives immunity for the negligent acts of government employees in specific, narrow circumstances. *See* TEX. CIV. PRAC. & REM. CODE § 101.021.

Because governmental immunity is jurisdictional, it is properly raised through a plea to the jurisdiction, which we review de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). The party suing the governmental unit bears the burden of affirmatively showing waiver of immunity. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578

S.W.3d 506, 512 (Tex. 2019). "To determine whether the party has met this burden, we may consider the facts alleged by the plaintiff and the evidence submitted by the parties." *Id.* (citing *Tex. Nat. Res. & Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001)). When a plea challenges jurisdictional facts, our review mirrors that of a traditional summary judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

To that end, in evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex. 2004). When the pleadings and evidence generate a "fact question on jurisdiction," dismissal on a plea to the jurisdiction is improper. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010); *see also Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000) (noting that "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction"). However, "if the evidence is undisputed or fails to raise a fact question," the plea must be granted. *Hayes*, 327 S.W.3d at 116.

## III. Discussion

### A. The Tort Claims Act's Emergency Exception

We first address whether the Masperos' claims fall within the Texas Tort Claims Act's emergency exception. TEX. CIV. PRAC. & REM. CODE § 101.055(2). If they do, then Section 101.021(1)(A) of the Act does

not waive the City's immunity from those claims regardless of whether they would otherwise fall within the scope of that waiver.[3]

> Under Section 101.055, the Act:

> does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

*Id.* § 101.055(2). The plaintiff bears the burden of negating Section 101.055's applicability. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006). The Masperos do not dispute that Officer Kory was responding to an "emergency situation." Therefore, even if the Masperos' claims satisfy the requirements for waiver of immunity under Section 101.021(1)(A), the Act "does not apply," and the City thus retains immunity, if the Masperos failed to raise a fact issue that either (1) Officer Kory's pursuit violated the laws and ordinances applicable to emergency response or (2) the pursuit was reckless. TEX. CIV. PRAC. & REM. CODE § 101.055(2).

---

[3] Section 101.021(1)(A) of the Tort Claims Act waives immunity for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment[.]

TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A).

Based on the structure and language of the pertinent statutory provisions governing emergency response, the distinction between these inquiries largely collapses in this case. Specifically, under Texas Transportation Code Section 546.006, a driver of an emergency vehicle must drive "with appropriate regard for the safety of all persons" and is not relieved of "the consequences of *reckless disregard* for the safety of others." TEX. TRANSP. CODE § 546.006 (emphasis added). The Masperos argue, however, that Officer Kory violated applicable "laws and ordinances" in two respects independently of whether her conduct was reckless.

First, the Masperos contend that the following actions transgressed SAPD Procedure 609: (1) pursuing an individual who is not a known felony offender (other than for evading arrest); (2) engaging in and continuing the pursuit of Rodriguez without affirmative authorization from a supervisor; (3) initiating and continuing a high-speed chase through school zones;[4] and (4) engaging in a pursuit when the "benefit of apprehension" did not "outweigh[] the risk to the officer or the public."[5] However, a police department's internal policies, in and of themselves, are not "laws" or "ordinances." *See* BLACK'S LAW

---

[4] In considering whether a pursuit should continue, Procedure 609 requires officers to consider nearby "[s]chool zones or areas where large crowds gather."

[5] Procedure 609 states, "Officers engage in a vehicular pursuit only when the benefit of apprehension outweighs the risk to the officer or the public." The Masperos point to testimony from Sergeant Scaramozi at Rodriguez's criminal trial, in which counsel asked whether "the benefit of apprehension in this case [was] outweighed by the risk to the officer or the public" and Scaramozi responded, "Not in my opinion."

DICTIONARY (11th ed. 2019) (defining "law" as "[t]he aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action," and defining "ordinance" as "[a]n authoritative law or decree; specif., a municipal regulation, esp. one that forbids or restricts an activity"); *Roche v. City of Austin*, No. 03-17-00727-CV, 2018 WL 3978333, at *2 (Tex. App.—Austin, Aug. 21, 2018, no pet.) ("A police department's internal policy or procedure is not a 'law' or 'ordinance' for purposes of waiver of immunity pursuant to Texas Civil Practice and Remedies Code section 101.055(2)."). Indeed, Procedure 609 explicitly states that it is not binding law; rather, it "establishes guidelines for officers in situations necessitating the use of emergency vehicles." Therefore, even if the evidence raises a fact issue as to Officer Kory's alleged noncompliance with Procedure 609, such noncompliance does not by itself amount to a violation of "laws and ordinances applicable to emergency action." TEX. CIV. PRAC. & REM. CODE § 101.055(2).

The Masperos further argue, however, that Officer Kory's failure to comply with department policy does amount to a statutory violation in one specific respect. They cite Transportation Code Section 546.003, which states that "the operator of an authorized emergency vehicle engaging in conduct permitted by Section 546.001 shall use, at the discretion of the operator *in accordance with policies of the department or the local government that employs the operator*, audible or visual signals." TEX. TRANSP. CODE § 546.003 (emphasis added). SAPD Procedure 609 requires officers to activate their sirens for emergency calls unless they have received "on-air authorization from a supervisory

officer," and as noted, some evidence indicates that Officer Kory's siren was not activated when the collision occurred and that she did not receive authorization for that conduct. Accordingly, the Masperos reason that by violating Procedure 609 in this manner, she also violated Section 546.003.

We disagree. Section 546.003 applies to officers while "engaging in conduct permitted by section 546.001," not while engaging in pursuit of a fleeing suspect. *Id.* Section 546.001 in turn enumerates specific conduct that would otherwise violate various traffic laws, including "proceed[ing] past a red or stop signal or stop sign," "exceed[ing] a maximum speed limit," and "disregard[ing] a regulation governing . . . movement or turning in specified directions." *Id.* § 546.001. Reading these provisions together, they require officers to employ sirens, consistent with department policy, when they are driving in a way that would violate those laws.

While Officer Kory does not deny speeding earlier in the chase, the AVL records show that she was driving below the speed limit once she exited IH-35 and proceeded toward Rodriguez on the access road. No evidence indicates that Officer Kory was engaged in any of the conduct enumerated in Section 546.001 after exiting the highway and before the collision. At that point, Section 546.003 did not govern her use of lights or siren.

Moreover, Officer Kory's use of her siren is inconsequential for purposes of Section 101.055. Section 101.055(2) requires a causal nexus between the plaintiff's claim and the government employee's reckless or illegal action. TEX. CIV. PRAC. & REM. CODE § 101.055(2) (stating that

the Act does not apply to a claim "arising . . . from the action of an employee . . . if *the action* is in compliance with the laws and ordinances applicable to emergency action") (emphasis added). The Masperos fail to explain how their injuries arose from Officer Kory's alleged failure to use her siren. It is undisputed that she had activated her emergency lights, and the crash report indicates that Rodriguez veered into the Masperos' lane to move around another vehicle. Any suggestion that the siren would have prevented the collision, particularly given the extreme recklessness of Rodriguez's conduct, is speculation at best. Therefore, the evidence that Officer Kory failed to use her siren does not foreclose the Act's emergency exception. Accordingly, the exception applies unless a fact issue exists as to whether Officer Kory acted "with conscious indifference or reckless disregard for the safety of others." *Id.*

The court of appeals held that the Masperos presented sufficient evidence to raise such a fact issue, citing the following facts: (1) Officer Kory drove well above the speed limit, including while taking exits, and mimicked Rodriguez's reckless driving; (2) Officer Kory disregarded Procedure 609, which required her to obtain authorization for the pursuit; (3) the benefit of apprehending the suspect did not outweigh the risk to the public; (4) Officer Kory failed to terminate the chase even when she knew she could not catch Rodriguez; and (5) Officer Kory did not activate her siren during the chase. 628 S.W.3d at 484. The court concluded that these actions indicated that "Officer Kory acted with conscious indifference or reckless disregard for the safety of others" and was knowingly apathetic to the high risk of injury inherent in the pursuit. *Id.*

Under the Transportation Code, reckless driving consists of driving a vehicle in "willful or wanton disregard for the safety of persons or property." TEX. TRANSP. CODE § 545.401(a). In *Tarrant County v. Bonner*, we explained that this standard requires "conscious indifference," or "subjective awareness of an extreme risk." 574 S.W.3d 893, 902 (Tex. 2019). Further, recklessness reflects more than a "momentary judgment lapse" and instead "requires a showing that the driver committed an act he knew or should have known posed a high degree of risk of serious injury." *Perez v. Webb County*, 511 S.W.3d 233, 236 (Tex. App.—San Antonio 2015, pet. denied) (citing *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998)).

In this context, we recognize we must tread carefully. On one hand, *all* high-speed car chases involve obvious risk of serious injury to bystanders.[6] Yet, we have long recognized that fleeing suspects may pose an even greater danger to the community. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 99 (Tex. 1992) (plurality opinion) ("[W]e recognize that police pursuit is often important and necessary in apprehending criminals posing a danger to our society," but we cannot "conclude that all chases are reasonable no matter what the circumstances."). Law enforcement must retain discretion to assess and balance these risks using reasoned judgment. *Id.*

Here, Officer Kory had specific instructions to stop Rodriguez and had reason to believe he was transporting drugs as part of a larger drug-

---

[6] The Masperos' expert report presented several statistics, including that "41% of urban police pursuits will end in an accident" and "33–34% of police fatalities will be innocent bystanders."

trafficking operation.[7] She did not chase him into an obviously dangerous area or force him to crash. The Masperos and the court of appeals emphasize that early in the chase Officer Kory was speeding and swerving. 628 S.W.3d at 484. But these acts in isolation are insufficient to bypass the emergency exception. First, a police officer's speeding and swerving during a pursuit are not inherently reckless actions. Exceeding the speed limit is part and parcel of a police chase. As the U.S. Supreme Court noted in *Scott v. Harris*, to hold otherwise is to incentivize fleeing criminals to drive as recklessly as possible. 550 U.S. 372, 385 (2007) ("[W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger. . . . Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights."). Moreover, no evidence suggests that the speeding itself was a cause of the crash. Officer Kory was still pursuing Rodriguez at the time of the collision, but by that point she had significantly slowed down.

Finally, Officer Kory's other actions during the chase indicate that she engaged in some degree of risk assessment. She slowed down at intersections even when she temporarily lost sight of Rodriguez's vehicle. Additionally, she communicated with Sergeant Scaramozi throughout the chase, and she never disregarded or ignored any

---

[7] The City's expert report states that officers were instructed to "detain suspects leaving the ranch in an attempt to positively identify them and whether they were involved in the reported drug distribution network."

instructions to modify or terminate the pursuit. These facts do not suggest that Officer Kory's actions generated "extreme risk" beyond that which is inherent in high-speed pursuits. *Bonner*, 574 S.W.3d at 902. They also do not raise the inference that she "reckless[ly] disregard[ed]" the increased danger generated by her actions. TEX. CIV. PRAC. & REM. CODE § 101.055(2). In fact, by slowing down at intersections, she demonstrated intent to minimize potential harm, even at risk of letting Rodriguez get away.

In sum, we hold that pursuant to Section 101.055's emergency exception, the Tort Claims Act "does not apply" to the Masperos' claims. *Id.* Therefore, the Act does not waive the City's immunity from suit.

### B. Negligent Implementation of Policy

Finally, we address the court of appeals' holding that the City's immunity was waived with respect to the Masperos' claim for negligent implementation of policy. 628 S.W.3d at 485–86. The Tort Claims Act does not create the basis for that holding. Rather, the court of appeals derived it from our statement in *Ryder Integrated Logistics, Inc. v. Fayette County* that "a peace officer's flawed execution of policy gives rise to a colorable negligence claim." 453 S.W.3d 922, 928 (Tex. 2015) (citing *State v. Terrell*, 588 S.W.2d 784, 788 (Tex. 1979)).

As the City argues, no such independent ground for immunity waiver exists. First, waiver of sovereign immunity is within the province of the Legislature, not the courts. *See, e.g.*, *Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300–01 (Tex. 2014); *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) ("We have consistently

deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function.").

Second, the court of appeals misconstrued both *Ryder* and *Terrell* to support its holding. In *Ryder*, we addressed the requirement of negligence or wrongful conduct by a government employee as part of a waiver of immunity under the Tort Claims Act. 453 S.W.3d at 928. But we did not purport to recognize an independent, common-law immunity waiver for a claim of negligent implementation of policy.[8]

The court of appeals also cited the following statement in *Terrell*:

> [I]f the negligence causing an injury lies in the formulating of policy—*i.e.*, the determining of the method of police protection to provide—the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Act.

588 S.W.2d at 788 (emphasis removed). In that case, we analyzed whether a claim for which the plaintiffs had *already established* waiver under the Tort Claims Act fell within a statutory exception, not at issue here, applicable to certain discretionary acts. *See id.* at 785–86; TEX. CIV. PRAC. & REM. CODE § 101.056. Specifically, we clarified the distinction between negligent-formulation-of-policy claims, which fall

---

[8] In fact, in *Ryder*, we explicitly incorporated the cited discussion of negligent implementation of policy into our broader analysis of whether Section 101.021(1)(A) applied: "[T]he tortious act alleged must relate to the defendant's operation of the vehicle . . . . In other words, even where the plaintiff has alleged a tort on the part of a government driver, there is no immunity waiver absent the negligent or otherwise improper use of a motor-driven vehicle." 453 S.W.3d at 928.

under the exception, and negligent-implementation-of-policy claims, which do not. *Terrell*, 588 S.W.2d at 788. Just as in *Ryder*, we did not purport in *Terrell* to recognize an independent ground for waiver of immunity unmoored from the Tort Claims Act or any other statutory waiver. The court of appeals erred in doing so here.

## IV. Conclusion

The Masperos failed to present evidence that Officer Kory's actions in responding to an emergency situation were reckless or violated applicable laws or ordinances. Therefore, the Tort Claims Act's emergency exception applies, and the Act does not waive the City's immunity from suit. Further, no independent basis exists to support waiver of the City's immunity with respect to the Masperos' claim for negligent implementation of policy. We accordingly reverse the court of appeals' judgment and dismiss the Masperos' claims for lack of jurisdiction.

_____

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** February 18, 2022